## Case No. 15,255.

### UNITED STATES v. GREEN.

[2 Cranch, C. C. 520.] [1]

Circuit Court, District of Columbia. Dec. Term, 1824.

FORGERY—REQUEST TO LEND MONEY.

A written request to lend money may be the subject of forgery at common law.

Indictment [against James Green] for forging "a certain paper writing purporting to be a request or order upon one R. Woodward for the loan of money, and to be signed by one John Duley, with the name of the said John Duley thereunto affixed, the tenor of which paper writing is as follows, to wit: 'Georgetown, October 19, 1824. Mr. R. Woodard, Sir, would you Be so kind as To lend me ten or 15 Dollars And Eye will call And settle with you on the 20th. John Duley.'— with intent to defraud the said R. Woodward, otherwise called Roswell Woodward, against the form of the statute in that case made and provided, and against the peace and government of the United States." The defendant pleaded guilty. But THE COURT, having some doubt whether it was forgery either at common law or under the Maryland act of 1799 (chapter 75, § 2), took time to consider. That act has the words, "any warrant or order for payment of money."

[1] [Reported by Hon. William Cranch, Chief Judge.]

---

## Case No. 15,256.

### UNITED STATES v. GREEN.

[3 Mason, 482.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1824.

HABEAS CORPUS—RETURN—ATTACHMENT—INFANT —RIGHT OF CUSTODY.

1. Upon a habeas corpus to restore an infant to the custody of her parent, the court will look into all the facts stated in the return, and will not discharge the defendant, simply because he declares the infant not to be in his possession, power, or custody, if the conscience of the court is not satisfied that all the material facts are disclosed.

    [Cited in U. S. v. Williamson, Case No. 16,- 726; Ex parte Des Rochers, Id. 3,824; Ex parte Everts, Id. 4,581; Re McDonald, Id. 8,751; King v. McLean Asylum of the Massachusetts General Hospital, 12 C. C. A. 139, 64 Fed. 327.]

    [Cited in Shattuck v. State, 51 Miss. 50; State v. Scott, 30 N. H. 278.]

2. An attachment is the usual process to bring a party into court, where he has not made a true return; and if he is present in court, no such process is necessary; but the court may pass an order directing him immediately to answer interrogatories.

    [Cited in U. S. v. Anonymous, 21 Fed. 768; Re Barry, 42 Fed. 123.]

3. A father is not, of course, upon a habeas corpus, entitled to the custody of his infant child, if brought into court, but the court will exercise its discretion on the subject, and place the infant where it will be most for its benefit.

    [Cited in Re Can-Ah-Couqua, 29 Fed. 690; Re Barry, 42 Fed. 118.]

    [Cited in Jones v. Darnall, 103 Ind. 573; 2 N. E. 229; Re Lally (Iowa) 51 N. W. 1156; Weir v. Marley, 99 Mo. 484; 12 S. W. 801; Sturtevant v. State, 15 Neb. 463, 19 N. W. 619; Giles v. Giles, 30 Neb. 627, 46 N. W. 917; Clark v. Bayer, 32 Ohio St. 308; Heinemann's Appeal, 96 Pa. St. 114; Hoxsie v. Potter, 16 R. I. 377, 17 Atl. 130; Nugent v. Powell (Wyo.) 33 Pac. 27.]

Habeas corpus upon the petition of Aaron Putnam, a citizen of New York, against Timothy Green, a citizen of Rhode Island, to bring up the body of Eliza A. Putnam, an infant daughter of Putnam, about ten years old, alleged to be wrongfully detained in the custody of the defendant, who was her grandfather. Upon the execution of the writ, a special return was made by the defendant, alleging, that the infant was the

[1] [Reported by William P. Mason, Esq.]

child of his daughter Mary, who married Putnam, and had since deceased; that in 1817, Putnam became embarrassed, and brought his wife and the said infant to reside at his house in North Providence, where they lived for two years; that they were subsequently removed to Connecticut, and again came back to his house with the consent of Putnam; that the wife died in his family in 1820, and upon her death-bed requested her parents to keep and bring up the said infant as their own; that they promised accordingly so to do: that the infant had ever since, until within a few months, resided in his family, and she was then placed by them in the Friends' Seminary at Providence for education; that he called at that seminary this morning to see her, and then understood she was not there, and the superintendent did not know where she was, or how she went away; that the infant never had been under any restraint, but was at all times at perfect liberty in his family; that she had a great unwillingness to go away and live with her father; and "that neither at the coming of the writ to him, nor at any time since, has the said Elizabeth (the infant) been, nor is she now in his power, possession, custody, or control."

Upon this return, Elisha Williams, for the petitioner (Putnam), moved for an attachment against the defendant, grounded upon the insufficiency of the return. He argued, that the defendant had not answered the exigency of the writ; that the return was evasive and did not state all the facts within the knowledge of the defendant, who had spirited away the infant to avoid the process; that an attachment in such cases was the proper process. 5 Term R. 89; 10 Johns. 328.

Cozzens & Hunter, for defendant e.contra, argued, that the return was full and direct, and not evasive; that it was in the very terms of those returns, which courts of law had held sufficient; that a writ of habeas corpus only issues in cases of coercive restraint of a party in the custody of another. Here, there was no restraint, and the defendant had stated his inability to produce the infant in the fullest terms. He ought therefore to be discharged from farther inquiry and process. 5 Term R. 89; 3 Bac. Abr. "Habeas Corpus," p. 436; 13 Johns. 418.

STORY, Circuit Justice. In cases of this nature the court will look into all the facts stated in the return, and ascertain if they contain a satisfactory statement, upon which the party ought to be discharged. It will not discharge the defendant, simply because he declares, that the infant is not "in his power, possession, control, or custody," if the conscience of the court is not satisfied, that all the material facts are fully disclosed. That would be to listen to mere forms against the claims of substantial justice, and the rights of personal liberty in the citizen. In ordinary cases, indeed, such a declaration is satisfactory, and ought to be decisive, because there is nothing before the court upon which it can ground a doubt of its entire verity, and that in a real and legal sense the import of the words "possession, power, or custody," is fully understood and met by the party. The cases of Rex v. Winton, 5 Term R. 89, and of In re Stacy, 10 Johns. 328. show with what jealousy courts watch the terms of returns of this nature. See, also, Ex parte Eden, 2 Maule & S. 226. In those cases there was enough on the face of the return to excite suspicions that more was behind, and that the party was really within the constructive control of the defendant. Upon examining the circumstances of this case, I am not satisfied, that the return contains all those facts within the knowledge of the defendant, which are necessary to be brought before the court, to enable it to decide, whether he is entitled to a discharge, or, in other words, whether he has not a power to produce the infant, and control those in whose custody she is. There is no doubt, that an attachment is the proper process to bring the defendant into court. But suppose he were here, the next step would be to require him to purge his supposed contempt, and to answer interrogatories. That is the very object of the present motion. But an attachment can be necessary only when the party is not present in court. The defendant is now personally present, and the court may directly make an order, that he shall answer farther interrogatories to be drawn up at the bar. It is wholly unnecessary to go a circuitous route, when there is a direct path open before us. I shall therefore make an order to this effect. Order accordingly.

Upon this order the defendant answered a series of interrogatories put by leave of the court in writing to him. These, however, being still unsatisfactory to the plaintiff,

E. Williams, in his behalf, moved for an attachment, which motion was opposed by Cozzens & Hunter, for defendant. Upon this motion, a wide discussion arose as to the right of the father to have the custody of the infant under the circumstances of the case.

STORY, Circuit Justice. As to the question of the right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the benefit of the infant, the law presuming it to be for his interest to be under the nurture and care of his natural protector, both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances, and ascertain whether it will be for the real, permanent interests of the infant; and if the infant be of sufficient discretion, it will also

consult its personal wishes. It will free it from all undue restraint, and endeavour, as far as possible, to administer a conscientious, parental duty with reference to its welfare. It is an entire mistake to suppose the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody. The case of Rex v. De Manneville, 5 East, 221, is not inconsistent with this doctrine; but on the other hand supposes its existence. The court there thought it for the interest of the child to give the custody to the father. The judges thought there was no reason to suppose the father would abuse his right, or injure the child. Lord Eldon, in De Manneville v. De Manneville, 10 Ves. 52, avowed his approbation of the doctrine, and said, he had, exercising the authority of the king, as parens patriæ, removed children from the custody of their father, when he thought such custody unsuitable. The case of In re Waldron, 13 Johns. 419, is directly in point; and to the same effect is Rex v. Smith, 2 Strange, 982. My judgment follows these cases without hesitation.

The cause lay over until the next morning, when the parties entered into a specific agreement, as to the custody of the infant, which, being sanctioned by the court, was by the consent entered of record. Whereupon further proceedings were stayed.