## The State *v.* Scott & *ux.*

The return upon a writ of habeas corpus is not conclusive evidence of all the facts it contains.

The mother who, upon the death of the father of her child, has married a second husband, is not entitled as of course to the custody of such child.

Where a party claiming the custody of a minor, appears to be entitled to it, the court will consult the wishes of the child.

HABEAS CORPUS, directed to Joseph A. Scott and wife, on the petition of David Parker, commanding them to bring the body of John Gray, before the court in session, &c. The petition alleged that said Gray was improperly restrained of his personal liberty.

The return stated that Scott and wife were citizens of the State of Rhode Island, and residents in Providence, in that State, and were passing through the State of New Hampshire, on business, at the time the writ was served upon them. That Sarah E. Scott, the wife, is the mother of said John Gray, an infant of the age of eleven years, and by a decree of the supreme court of Rhode Island, the custody and control of the infant was vested in her. That on the 14th day of August instant, at Canterbury, in this State, at the request of the infant, she took him into her custody and under her protection, for the purpose of carrying him to her home in Providence, and that Joseph A. Scott, at the request and with the assent and approval of the infant, assisted her in so doing. That the said John Gray has not since that time been in any way imprisoned or restrained of his liberty, &c.

That before they took him into her custody as aforesaid, he expressed his desire to go home with his mother, and still persists in that desire. That the said Sarah E. Scott never at any time relinquished or transferred to any other, her right to the custody and protection of the child, &c. That the respondents took the child under their care and protection, in accordance with his own desire, for the express pur-

pose of taking him with them to their home in Providence, there to enjoy the advantages of the public instruction provided by that city, and were proceeding in the execution of that purpose when they were arrested by the writ.

The return was signed by Joseph A. Scott and by Sarah E. Scott.

It appeared in evidence that the infant had, in the year 1853, been sent by his mother, then a widow, to the society of Shakers residing in Canterbury, of which the petitioner was a member, with the request that the child should remain there as long as he was contented. That about a year afterwards she visited the society, saw her child, and expressed herself fully satisfied that he should remain there.

Evidence was adduced upon which a question arose whether, at the time the infant was removed by the respondents, as stated in the return, he was consenting to such removal, or chose rather to remain with the family of Shakers. On this point, and as to all the facts, it was urged that the return upon the writ was conclusive.

*George & Foster*, for the petitioner.

The return upon the writ of habeas corpus is not conclusive. The application is addressed to the sound discretion of the court; and in all cases of this character the courts will investigate the circumstances, and will not interfere between the parent or guardian and the person having the custody of the child, though under fourteen years of age, where the liberty of the child is not injuriously or unwarrantably infringed. 2 Kent's Com. 163; *United States* v. *Green*, 3 Mason 482.

In the case before the court there is no evidence of any neglect of duty on the part of those who have assumed the protection and education of the child. On the contrary, the child appears to have been treated with uniform kindness, to have received proper instruction and to be warmly at-

tached to his teacher and friends in the family in which he has long resided.

It would seem harsh and unreasonable, unless in accordance with the child's own desires, to take him from the care of those who have provided support, education and a home for him, and deliver him to the mother, who, by her marriage to her present husband, has ceased to have the control of her own actions and the means of providing for the maintenance and education of her offspring by a former marriage. For these objects, so indispensable to the well being of the child, the husband is under no legal obligation to incur any expense; and even if at present inclined to place himself *in loco parentis*, by receiving the child into his own house, he may hereafter, at any moment, relieve himself of the incumbrance. *Tubbs* v. *Harrison*, 4 Term 118.

Indeed, we think the adjudged cases furnish no exception to the sound and reasonable rule and practice, that where the child is of sufficient age to comprehend its own wishes, and is permitted to express them, without the restraint of fear or of undue persuasive influences, the court will permit the child to choose for itself. *State* v. *Cheeseman*, 2 South. 445; *Commonwealth* v. *Hammond*, 10 Pick. 274; *Commonwealth* v. *Hamilton*, 6 Mass. Rep. 273; *In the matter of Mc-Dowles*, 8 Johns. 328; *In the matter of Waldron*, 13 Johns. 418.

*Fowler*, for the respondents, agreed that the return upon the writ of habeas corpus, is conclusive evidence of the facts set forth therein.

He cited, in support of that position, the case of *The People* v. *Chegary*, 18 Wend. 639, and *Commonwealth* v. *Chandler*, 11 Mass. Rep. 83, and Bac. Ab., Title Habeas Corpus, therein referred to.

Woods, C. J. The petitioning party, in this case, makes no claim in his own behalf, or in behalf of others, to the

legal custody, tuition or services of the infant John W. Gray. If the persons who, in 1853, committed him to the care of the United Society of Shakers, had any power to bind him as an apprentice to the society, or to any of its members, there is no suggestion that such power was legally exerted. And it is well settled that the natural right of the parent to the custody of the child yields to those cases in which the real and permanent interests of the child demand a different disposition. And it is wholly lost and disappears, where the mother surviving, has, by a second marriage, surrendered that legal discretion which is necessary to render the parental control of benefit to the child. *Worcester* v. *Marchant*, 14 Pick. 510, and cases there cited. Such is the condition of Mrs. Scott, the mother of Gray.

The court have, therefore, nothing to do upon this proceeding but to inquire if the child is restrained of his liberty, and if so, to set him free. There is no evidence that he did not receive suitable treatment, in every particular, at the hands of the United Society, to whose care he had been intrusted by his mother. All the proof we have, indeed, goes to show that she was herself satisfied, after a year's experiment, with what had been done. Nor are any grounds afforded for us to presume that the intentions or the abilities of the parties who have brought him into court, may not be fully trusted, and that the infant may not, with a just regard to his own interests, be permitted to choose for himself either of the two parties, or any third party for a protector. The petitioner and respondents, in short, stand without prejudice before the court.

But we do not consider the return of the writ as conclusive as to all the particular facts contained in it. The object of the writ is inquiry whether the party be in fact under restraint, and if so, the reasons and warrant for the same; an object which might often fail to be secured, if the court had no power to look beyond the return, and inquire into the truth as well as the sufficiency of its averments. Such

return has been declared to be of inconclusive effect in cases where the party, charged with being in custody, is not produced in court, and the return merely denies that the respondent has him in custody. *United States* v. *Green,* 3 Mason 482, cited in the argument. The case is certainly stronger, where, by producing the party, the custody is in a sense admitted, and the effect of the return is to justify it. Although the decisions are not uniform upon the question of the effect of the return, yet we think the better opinion is that it is not, in all cases, conclusive.

To ascertain, therefore, whether there be, in fact, restraint or *duress,* we think we may properly receive any evidence that may be regularly adduced to controvert the effect of the return in this particular. And among other things, the examination of the infant himself, who may state his own wishes. This examination may be made by the court, or by a committee appointed by them. We think it the better course to refer the question to a committee.

Note. At this term, a committee, consisting of three members of the bar, was appointed for the purpose indicated in the opinion, who, upon examination, reported that the infant exhibited capacity to choose for himself, and that his choice was to remain with the respondents, and not to return to reside with the United Society of Shakers. He was accordingly permitted to do so, the only object of the court being to set the child at liberty.