### *JOSEPHINE AMMON v. T. H. JOHNSON, GUARDIAN.

1. PETITION AND RETURN CONSTITUTE PLEADINGS.

   In an action of habeas corpus, the petition and return, if they raise a material issue of fact, are such pleadings that that issue may be determined in that action.

2. RETURN DENYING ALLEGATIONS OF PETITION RAISES AN ISSUE.

   A return by respondent in such an action by the petitioner, as guardian for the body of his ward, that she has not had the custody or control of the body sought, thereby denying the allegations of the petition, raises such an issue.

3. PERSON RESTRAINED NEED NOT BE IN COURT.

   Nor is the hearing in such a case defeated by the fact that the person whose body is sought to be obtained is not found by the sheriff.

4. PRIVILEGE OF WITNESS TO REFUSE TO ANSWER QUESTION IS PERSONAL.

   The privilege of a witness to refuse to answer a question on the ground that it will tend to criminate the witness, cannot be interposed solely by counsel, especially where the witness swears that to answer will not tend to criminate her.

5. DOES NOT EXTEND TO ANSWERS WHICH DISGRACE WITHOUT CRIMINATING.

   A witness may not refuse to answer a question pertinent to the issue on the ground that the answer will tend to disgrace her, when it will not tend to criminate, and the witness so testifies.

6. WRITTEN CHARGES FOR CONTEMPT NOT REQUIRED.

   Under sec. 5252, Rev. Stat., no specifications in writing are required against a witness who is punished for contempt in refusing to answer questions put to her on the stand as a witness.

7. TRIAL BY JURY NOT REQUIRED.

   In a proceeding for contempt in refusing to answer as a witness, the witness is not entitled to a trial by jury.

8. FINE MAY BE REMITTED ALTHOUGH IMPRISONMENT HAS COMMENCED.

   Where the court has imposed a fine upon a witness refusing to answer, and ordered her to be imprisoned until she answers and pays the fine—it is within the power of the court during the same term of court, and while the action in which she refused to answer is still pending, and after her imprisonment has commenced, to remit the fine and that part of the sentence of imprisonment relating to it.

---

* This case was dismissed by the supreme court for failure to file a printed record, October 2, 1888. It is cited in case of George. *In re*, 3 Ohio Circ. Dec. 000 (s. c. 5 C. C. R., 211.)

**9.** WANT OF FORM IN THE PROCESS OF COMMITMENT.

> The order of commitment for refusal to answer a question under sec. 5256 Rev. Stat., which requires the questions to be stated in the order. means the process that issues to carry out the judgment.

BALDWIN, J.

This is a proceeding in error to reverse an order of the court of common pleas in a proceeding for contempt made on the 12th day of January, 1888, which reads as follows:

"In the matter of the application for a writ of habeas corpus for the person of Josephine Blann, and in the hearing of the charge against said Josephine Ammon of contempt of court in refusing to make any proper or lawful return to said writ of habeas corpus, or to produce the said Josephine Blann, and also upon the hearing of the truth or falsity of said return, said cause came on to be heard on January 11, 1888, on the answer of said defendant, Josephine Ammon, the affidavits filed by both sides and oral evidence, and said Josephine Ammon was called to the stand and testified touching her said alleged contempt in said case, and upon the facts embodied in said return; that before she got through giving her evidence the said hearing was adjourned to January 12, 1888, but, before said adjournment, said Josephine Ammon was asked the same questions hereinafter referred to, and she was ordered by the court to answer the same, which she refused to do. And she was again called to the witness stand on said January 12, to further testify on the merits of said cause, and thereupon, while she was upon the said stand, the counsel for the complainant had lawfully put to her several lawful and pertinent questions touching the said alleged contempt and her knowledge of the whereabouts of said Josephine Blann; each and every one she then and there refused to answer. The said court of common pleas of said county, Judge E. T. Hamilton presiding, before which the case was being heard, then and there directed and ordered said Josephine Ammon to answer each and every of said questions, and the said Josephine Ammon then and there deliberately refused to answer either of them, and defied the authority of said court, and would not and did not answer said questions or either of them, and was then and there and thereby guilty, in open court, of misbehavior and contempt of said court and its judicial authority. Whereupon the court doth find and adjudge the said Josephine Ammon guilty of said misbehavior and contempt of said court as aforesaid, and doth assess against her a fine of $100, and do order and adjudge that she stand committed to the jail of said county of Cuyahoga until the said sum of $100 is paid, and until she is ready and willing to purge herself of her said contempt as aforesaid, and to obey the orders of the court in that behalf, or until she is otherwise discharged by due process of law. And it is ordered and directed that the sheriff of said county take the said Josephine Ammon into his custody and commit her to the jail of said county."

The original suit was one in habeas corpus by T. H. Johnson, as guardian of Josephine Blann, against Josephine Ammon, charging her with the unlawful detention of his ward. The petition for habeas corpus was filed January 3, 1888, and the writ was served the same day, but Mrs. Ammon having made no return on the 7th, the plaintiff filed an affidavit, charging her with a contempt in not doing so. An alias writ was issued, which was served. She made return on the 9th, the substance of which, so far as it is now necessary to state it, was that:

"Third—She had not the said Josephine Blann in her custody or power, nor is she, the said Blann, under any restraint from this respondent, and further, that at the time of the issuing and service of said habeas corpus the said Blann was [not omitted, probably] in her custody, power, or control, or in any manner restrained of her liberty by or through respondent.

"Fourth—She says she never had the said Josephine Blann in her custody or power, nor has she at any time transferred such supposed custody to another."

The hearing commenced on the 11th and was continued on the 12th, when Mrs. Ammon, being on the stand as a witness, refused to answer questions which she was directed by the court to answer, and the order already read was made to reverse which the petition in error was filed, and it is to be understood that the matter before us is simply the order made in regard to her contempt in refusing to answer questions as a witness when she was upon the stand.

There are numerous claims of error which can be considered more easily in an order and method more logical than was necessary or usual in a petition in error.

It is said first that the court had no jurisdiction to proceed after her return. In order that the court should have power to punish for contempt in not answering, it is necessary that the court should have jurisdiction in the case in which the questions were put. If the case was still pending, and she was properly a witness, the court had jurisdiction if she placed herself in contempt.

The action of habeas corpus—the great writ of right—as it is called, intended to protect personal liberty, is so old that this action has in a measure forms and modes peculiar to itself—but peculiarly well adopted to relieve a person illegally detained.

The application is to be by petition verified and filed as in other cases, sec. 5728, Rev. Stat.

The party defendant is required to make what is generally styled a return, but which is substantially an answer. Section 5744 provides when the return sworn to "shall be *prima facie* evidence, and when it shall be considered only a plea of the facts therein set forth and the party claiming the custody shall be held to make proof of such facts."

In the case of Knapp v. Thomas, 39 O. S., 375, 378, the return is called an answer, and so in Church's Habeas Corpus, sec. 120, and Hurd on Habeas Corpus, 2d ed., p. 235, and in the case of White v. Gates, 42 O. S., 109, 111, the plaintiff demurred to the return as under sec. 5068, Rev. Stat., he would have the right to do to an answer, and the cause was determined upon that.

It is generally treated as a civil action. It is within the judiciary act of the United States. 4 Wall. (U. S.) Rep. 2, 1001. If by making a false return the proceedings could be stopped, what would become of this leading action, or of justice? Nor is it necessary that if the parties to the cause are in court that the body sought should be. U. S. v. Green, 3 Mason, 482; State v. Scott, 30 N. H., 247; *In re* Jackson, 15 Mich., 417, and see Church's Habeas Corpus, 163. If an issue of law or fact is raised by the petition and answer or demurrer, it is to be heard and determined as in other cases.

In this case there was an issue of fact. Petitioner said Mrs. Ammon had the custody and detained Josephine Blann, and Mrs. Ammon said she had and did not. That issue was for hearing on proper evidence. That upon a return that respondent had not had the custody, the petitioner was not remitted solely to a proceeding for contempt in making a false return, but that the cause should proceed to hearing, appears from sec. 5738, providing that the return should state:

1. Whether he has, or has not the party in his custody or control.

2. If he had, he shall set forth the authority for it.

3. If he has transferred such custody or restraint, he shall state particularly to whom, at what time, for what cause, and by what authority such transfer was made; and sec. 5751, providing that "the proceedings upon a writ of habeas corpus may be reviewed on error as in other cases."

Both of these sections first appear in the same act, passed February 8, 1847 (45 O. L., 45), and read "upon all writs of habeas corpus." The word "all" being then necessary because there were then other prior laws authorizing the writ (act of 1811 not repealed by the act of 1847), while in Revised Statutes the whole subject is placed in one act.

So that the legislature plainly contemplated in that act that no return deny-

ing should be an end to the habeas corpus case, and that such steps might in all cases be taken as might be reviewed in error. The act of 1847, as I have said, was in addition to the act of 1811, and it is to the consolidation of these two acts in our Revised Statutes that some awkwardness of language therein is due.

We are of the opinion that the suit in habeas corpus was properly pending, and that it was proper for the plaintiff to call witnesses to the stand, and that as in any other case he had a right to call upon his opponent to testify.

It is not objected that there was no legal evidence that the relator was in fact guardian of Joseph Blann. He alleged in this verified petition that he was, and she did not deny it in her answer, thereby admitting it; but, indeed, this admission was immaterial; petitioner had a right, subject to the discretion of the court, to take such order as he chose in his evidence, and the contempt proceeding complained of took place during the progress of the petitioner's case.

It is next claimed that she was privileged not to answer the questions, for not answering which she was committed; on the ground that her answers might tend to criminate or disgrace her, and to state it, as in the fifth stated ground of error, "The court erred in overruling the objection of her counsel to a forced examination as to the truth or falsity of her sworn return."

Counsel had no right to and did not object to her being called as a witness. As soon, however, as she was placed upon the stand, her counsel stated to the court that they had advised her not to answer questions in relation to the issues on hearing. The second question was:

"For how long a time have you had the **care, custody, and control** of Josephine Blann?"

Counsel interfered: "She won't answer that."

She replied at once, however, "I have never had the custody and control."

Counsel—No, no, no; don't answer that; I object.

The Court—We do not think it the province of counsel to tell a witness what she should answer and what she should not answer. You say you have advised her?

"Yes, sir."

The Court—We think it a personal privilege for the witness, and she may take it or not, as she sees proper.

The court then said to the witness: "You have made report here, under oath, as I understand, of certain facts in relation to the custody, or want of custody, of Miss Josephine Blann. If there are any answers you think are going to endanger you by making them, having made such affidavit as you have by way of return, or if there are any answers that will tend to prejudice you by way of disgracing you, endangering you to a criminal prosecution, or otherwise, you can refuse to answer."

It is, of course, necessary to the administration of justice that witnesses who have sworn to tell the truth, the whole truth, and nothing but the truth, should be under obligation to do so. A court which has no power to enforce this obligation is weak indeed. This power has been said to be necessarily inherent in court. The law makes, however, a merciful provision that a witness not called in his own behalf, Este v. Wilshire, 44 O. S., 636, may decline to answer a question, the answer to which will tend to criminate, and in Warner v. Lucas, 10 O., 337, it is laid down as the rule of this state that the witness himself may judge whether that will be the effect of the answer. The law does not presume that the witness has so conducted himself that the answer will injure him; but if the witness claims the privilege it may be given. It is personal to the witness, who alone may know what the answer may be, and cannot be interposed solely by counsel, who may have other reasons why they do not wish the testimony given. See Wharton on Evidence, sec. 535, and the many cases cited; Greenleaf on Evidence, sec. 451.

The witness in this case uniformly testified that the answers sought would

not tend to criminate her, and generally that they would not disgrace her, though she sometimes evaded the questions as to disgrace.

The court, in limiting the right to ask her questions the answers to which would tend to disgrace her, extended the same rule which is applied as to questions not relevant to the issue and intended solely to disgrace the witness.

"On the other hand," says Mr. Wharton, "a witness cannot ward off answering a question material to the issue on the ground that it imputes disgrace to himself, such disgrace not amounting to crimination." Wharton on Evidence, sec. 542, and many cases cited. The distinction between questions material and immaterial to the issue and tendency to disgrace is clearly stated by Mr. Greenleaf with his usual elegance. 1 Greenleaf on Evidence, secs. 454-456.

The law on this subject was time and again stated to the witness by the court. Josephine Blann had been at her home, but was so concealed that she could not be found and it appeared she had gone away or had been removed. The facts as to the removal of Josephine Blann were very pertinent. The witness had stated that Josephine Blann was removed; that she had an idea where she was going to; that Miss Blann herself told her she would like to go away, and requested her not to tell where she went, and witness told her to go. She evaded continually and many times without giving any substantial answer as to her knowledge of Miss Blann's destination or expressed intentions, and distinctly and flatly refused to answer whether she had sent any communication to the person who she supposed had Miss Blann in charge, as well as several other questions relating to that subject. The evasions were so many and so direct that it would be impossible to properly present them in this opinion. She seemed to regard the whole examination as a game of questions, twice inviting the unsuccessful counsel to "ask her some more questions." The court adjourned to the next day, the judge suggesting that she should consult her counsel, and the next day, after her refusal to answer, the judgment which is claimed to be erroneous was made.

The next errors claimed are in refusing to direct charges to be filed as demanded by counsel and in proceeding without them. Before the respondent made any return at all, affidavits were filed to charge her with contempt in failing to do so. The contempt now in controversy is not that, but solely the refusing, when properly on the stand, to answer questions. The record fails to show that counsel demanded any specifications as to that. But were any unnecessary?

It is claimed by plaintiff in error, that the proceeding for contempt in refusing to answer questions was under sec. 5640, sub. 3: "A failure to obey a subpoena duly served, or a refusal to be sworn, or to answer as a witness, when lawfully required," and that sec. 5641 requires charges under this to be in writing, etc. Section 5650 provides that the sections just cited shall not apply to the remedy provided by sec. 5252, which reads as follows: "Disobedience of a subpoena, a refusal to be sworn, except in case of a refusal to pay fees on demand, a refusal to answer as a witness, or to subscribe a deposition when lawfully ordered, may be punished as a contempt of the court or officer by whom the attendance or testimony of the witness is required."

No reason is given why the power of the court was not complete under sec. 5252.

That requires no charges in writing. And so proceeding in such cases is in uniform accord with the practice of courts generally and for many years.

It is next said that the court erred in refusing to Mrs. Ammon a jury trial in a matter where her liberty and property were implicated. No jury was asked in the matter of refusing to answer question, for which she was punished. Nor should a jury have been granted; nor we will venture to say can a case be found where one was granted under such circumstances.

This is claimed under sec. 1, art. V., of the constitution. "The right of

trial by jury shall be inviolate," and sec. 10, providing that the party accused of a crime shall have a "speedy public trial by an impartial jury." This contempt was at most a "quasi criminal matter" and not a crime. The very case in error is entitled by the name of private parties and not in the name of the state at all. And this is proper. We considered this question so thoroughly in the case of Stephens v. Hutchins, to reverse an order for contempt in not obeying an injunction, and where the precise defense was relied on that the proceedings were not entered in the name of the state—that it is not necessary to again enlarge upon it.

We doubt if any case can be found making such a proceeding as that here in question a crime.

Rapaljie on Contempts, sec. 21 et al., and 98; Dunham v. State, 6 Ia., 250; 4 Paige N. Y., 325; 113 Mass., 411; Swan's Practice & Precedents, 1224; Wild's Journal Entries, 206; Wilcox, Forms and Practice, 642; see also 1 Bishop on Criminal Law, sec. 1007 and 2, *Ibid*, secs. 264, 266, 270.

The plaintiff had a right to her testimony and to the aid of the court to procure it. The constitution does not guarantee a trial by jury in every case—else there would be no cases in equity. This provision does not add to the right of trial by jury, but preserves it as it was before the constitution was adopted at common law. Willyard v. Hamilton, 7 O., pt. 2, 111; Work v. State, 2 O. S., 296-302; Norton v. McLeary, 8 O. S., 205, 209; Adler v. Whitbeck, 44 O. S., 539, 569.

Says Mr. Cooley, in his work on Constitutional Limitations, page 334: "Cases of contempt were never triable by jury, and the object of the power would be defeated in many cases if they were." There may be added to the many cases cited by him, Crow v. State, 24 Tex., 12; State v. Doty, 32 N. J. Law, 303; Dunham v. State, 6 Ia., 245.

On the 24th day of February, 1888, after the filing of the petition in this matter, but during the same term of the court of common pleas at which the order of the 12th of February, 1888, objected to was made, the order was modified by the court making it, and it was "ordered that so much of the court heretofore made in this action as assessed or directed payment of a fine of $100 against Josephine Ammon, and that she stand committed to the jail of said county until the same was paid, and all orders pertaining to said $100 fine in any way be, and the same is, hereby, vacated and set aside."

The plaintiff in error insists that it was not in the power of the court to modify the order heretofore made after it had commenced to be enforced, and upon that question it depends whether the order we are now asked to reverse is to be considered as including or excluding the fine and the enforcement of its payment. The ordinary doctrine that the court has power to set aside or modify its judgment during the same term is well settled and familiar. Longworth v. Sturges, 2 O. S., 105; Ash v. Marlow, 20 O., 119. The want of power in this instance is placed on the ground that the imprisonment of Mrs. Ammon had commenced, and we are cited to the case of Lee v. The State, 32 O. S., 113, where the guarded syllabus lends some color to the claim. It reads: "Where a court in passing sentence for a misdemeanor has acted under a misapprehension of the facts necessary and proper to be known in fixing the amount of the penalty, it may, in the exercise of judicial discretion, and in furtherance of justice, at the same term and before the original sentence has gone into operation, or any action has been taken upon it, revise and increase or diminish such sentence within the limits authorized by law."

There is at least one case (57 Me., 57) which decides that after the execution of a sentence has commenced it cannot be increased, though none that we have say that it may not be diminished. In the case of Lee v. State, *supra*, the sentence was increased. In none of the cases cited in Lee v. State, *supra*, is any reason given why there should be any difference in the extent of power of the

court during the same term over a civil case or one criminal or *quasi* criminal. The authorities on which the case of Lee v. State, *supra,* is based sustain generally the power to what was done in the case before us. In Basset v. United States, 9 Wall., (U. S. Supreme Court), 39, the judgment was set aside after imprisonment had commenced, and the court say: "The control of the court over its own judgment is of every day practice."

The matter was again before the Supreme Court of the United States in *Ex parte* Lange, 18 Wall., 163.

The syllabus reads: "The general principle asserted as applicable to both civil and criminal cases that the judgments, orders and decrees of the courts of this country are under their control during the term at which they are made, so that they may be set aside and modified as law and justice may require," is fully sustained in the opinion by Mr. Justice Miller "after a full review of the cases in the English and American courts on the question of the power of the courts over their judgments once rendered in criminal cases."

It was not claimed in the petition in error, but was said in argument, that the proceedings were erroneous because the questions put were not stated in the order of commitment. Section 5256, means evidently the process that issues to carry out the judgment of the court, because it says it must be under the seal of the court or officer directed to the sheriff and a copy given to the jailer. The want of form of this process, if any there were, is not made matter of complaint in the petition in error, nor is it before us in fact. We know not what form was used. It appears in the journal entry that there were put to her "several lawful and pertinent questions touching the alleged contempt and her knowledge of the whereabouts of the said Josephine Blann. Each and every one she then and there refused to answer." She refused outright to answer several questions, and made answers to many so evasive and entirely unresponsive that they were practically not answers to the questions put. These questions unanswered were all of one class relating to her knowledge of the whereabouts of Josephine Blann, and no more accurate description could be given of them. The knowledge she had of where Miss Blann was, was precisely what she desired to and did conceal. We think there was no material error in the rendition of the order of which petitioner in error complains.

The order of the court below, as modified by the change of February 24, 1888, is affirmed, and judgment is rendered against petitioner in error for the costs of proceedings in error.

Estep, Dickey & Squire, for plaintiff in error.

**T.** H. Johnson, Boynton & Hale, and J. M. Jones, for defendant in error.