BALL v. SMITH et al.

(Court of Civil Appeals of Texas. Austin.
April 2, 1913. Rehearing Denied
April 30, 1913.)

1. HABEAS CORPUS (§ 99*) — CUSTODY OF
CHILDREN—RIGHTS OF PARENT.

While the father, and, on his death, the
mother, is generally entitled to the custody of
infant children as their natural protectors for
maintenance and education, the right is not an
absolute one, and the guiding consideration by
which the court will be influenced in determin-
ing the question of the right to custody is the
welfare of the children.

[Ed. Note.—For other cases, see Habeas Cor-
pus, Cent. Dig. § 84; Dec. Dig. § 99;* Parent
and Child, Cent. Dig. §§ 13, 17.]

2. HABEAS CORPUS (§ 99*)—CUSTODY OF CHIL-
DREN—RIGHTS OF FATHER.

Relator was a lawyer of good practice, and
earned an income sufficient to support all his
children. He had the reputation of being a law-
abiding, truthful man, but his reputation for
morality was notoriously bad. On separation
of relator and his wife, he voluntarily surren-
dered to her three of their minor children, whom
she cared for for two years without his assist-
ance until her death, when they were delivered
to her brothers and sister, who were cultured,
Christian people, and financially well-to-do and
able and willing to care for them. This they
continued to do until relator remarried, when
he applied for the custody of the children, who
while they had been away from their father had
become alienated from him, and were disinclined
to return. Held, that an order refusing to re-
quire their surrender to the father, and permit-
ting them to remain in the custody of their
uncles and aunt, was proper.

[Ed. Note.—For other cases, see Habeas Cor-
pus, Cent. Dig. § 84; Dec. Dig. § 99;* Parent
and Child, Cent. Dig. §§ 13, 14.]

Appeal from District Court, Travis Coun-
ty; Chas. A. Wilcox, Judge.

Habeas corpus, on the relation of F. M.
Ball, against Edgar Smith and others. De-
cree for defendants, and relator appeals.
Affirmed.

This action was brought by relator, F. M.
Ball, against Edgar Smith, W. B. Smith, and
D. H. Hart, respondents, for writ of habeas
corpus to recover the custody and control
of his two minor children, Derie and Hart-
well Ball, aged, respectively, 12 and 8 years,
alleging that they were illegally restrained
of their liberty by them. By cross-action
respondents sought to recover through ha-
beas corpus proceedings from F. M. Ball the
custody and control of Frank M. Ball, Jr.,
and Eliza Ball, of the ages of 18 and 15
years, respectively, basing their right so to
do on the ground that said minors were the
children of relator and Linder Smith Ball,
now deceased, alleging that respondents Ed-
gar and W. B. Smith were the brothers of
said Linder Ball, deceased, and uncles of
said minors, and that respondent Hart was
the husband of Derie Hart, a sister of said
Linder Ball. Respondents Edgar and W. B.
Smith further alleged that their said sister
left to said children an estate of the value
of $20,000, and that by the terms of her will

they were appointed independent executors
thereof and trustees of all of said children,
with power to manage said estate for their
benefit, which said will had been duly filed
and probated, alleging that relator, by reason
of his immoral habits and mistreatment of
said children, was not a proper person to
have their custody and control, that none
of said children except Eliza Ball had during
the last four years been in the custody and
control of their father, and that the former
two were living with respondents, and that
none of said children desired to live with
their father. Answering, relator filed a gen-
eral denial and set up the fact that by decree
of the district court of Bowie county the
custody and control of his daughter Eliza
Ball had been awarded to him, and which he
pleaded as res adjudicata. The case was tried
before the court without a jury, who award-
ed the custody of all of said minors, except
Eliza Ball, to respondents, but awarded her
custody to her father, sustaining his plea of
res adjudicata, from which judgment relator
has appealed, urging by several assignments
that the facts did not warrant the conclusion
reached on the part of the court.

The court filed its conclusions of fact and
law, now adopted by us, and from which it
appears that relator and Linder Smith Ball
were husband and wife, and that the chil-
dren above named were the fruits of said
marriage; that F. M. Ball, Jr., was at the
time of the trial 18 years of age, and Eliza
Ball 16 years of age (the ages of Derie and
Hartwell Ball not being stated, but we pre-
sume that their ages were as heretofore
stated in the pleadings); that relator and his
said wife lived together until some time in
the year 1907, when domestic difficulties
caused a practical separation, though they
continued to live under the same roof until
about 1909, when on the 30th of November
of said year they were divorced by decree of
the district court of Bowie county, Tex.;
that by agreement said judgment awarded
the care and custody of Eliza Ball to relator,
and that of the other children to their moth-
er; that all of the children lived with relator
and his wife up to the time of the separa-
tion, and after that time lived with their
mother up to the date of the judgment of
divorce, after which Eliza Ball left her moth-
er's home to reside with her father, the other
three children remaining with their mother;
that in 1910 relator remarried, since which
time Eliza has continued to reside with her
father and stepmother. While relator was
absent from the state his former wife, Mrs.
Linder Ball, died, and was buried in Austin,
Tex., where her relatives resided, and all
the children accompanied the body of their
mother to Austin, and after the funeral were
taken in charge by respondents Edgar Smith
and D. H. Hart and their respective families.
Soon after this time relator requested that

these children be sent to him at Texarkana. Whereupon F. M. Ball, Jr., and Eliza Ball, returned to Texarkana to reside with him, and Eliza continued to reside with him ever since, but F. M. Ball, Jr., after a short while became dissatisfied, and after one unsuccessful attempt, ran away from his father, returning to his relatives in Austin, where he has since remained, the two younger children having lived with respondents in Austin since the death of their mother. Up to the time of the separation of relator and Mrs. Linder Smith Ball, deceased, relator supported all of his children comfortably, and was usually kind to them, though he would occasionally use improper language to them and in their presence; and on at least one occasion before the separation and on at least one occasion after F. M. Ball, Jr., returned to him from Austin, relator became violently angered with his said son, and punished him excessively. After securing a divorce from relator, Mrs. Linder Ball continued to reside at her home in Texarkana, retaining the custody of and supporting all of the children awarded to her in the divorce proceeding, relator contributing nothing to their support, and during which period relator saw little of these children; that the children remaining in the custody of Mrs. Linder Smith Ball (the ones whose custody was awarded to respondents) came to view the differences existing between their father and mother from their mother's standpoint, and at the date of their mother's death and at the time of the trial were and are more or less alienated from their father, and they strongly object to returning to him.

For some years previous to the divorce relator was notoriously immoral, and his reputation in Texarkana for morality is not now good, though it is not shown that he has been guilty of any immoral conduct since his second marriage. By reason of his moral delinquencies relator's social standing is not good; that relator is well regarded as a lawyer, has a good practice, and his income is sufficient to support all of his children. His reputation as a law-abiding, truthful man is good. Respondents and their families are cultured, Christian people; they have comfortable homes and are financially well-to-do; an affectionate attachment exists between them and the minor children of their sister, Mrs. Linder Ball, deceased. The children are and will continue to be well cared for, and the best educational advantages are being provided for them. They inherited a sufficient sum of money from their mother to provide for their support, and it will be for the best interest of the children, F. M. Ball, Jr., Derie Ball, and Hartwell Ball, that their care and custody be awarded to respondents.

Mahaffey & Thomas, of Texarkana, for appellant. R. L. Batts, D. H. Doom, and J. H. Hart, all of Austin, for appellees.

RICE, J. (after stating the facts as above). [1] By natural law, the custody of the child is given to the parent, for the reason that it is presumed that out of this relationship flow such love and affection for the child as would promote its best interests; but this is not an inalienable or paramount right. In the event of a failure on the part of the parent from any cause to perform this sacred trust, the state has the right to interfere and take from his custody the child, to the end that it may be properly reared and brought up. This is done in the interest of society and good government. It is said by Chancellor Kent (vol. 2, pp. 220, 221) that: "The father, and on his death the mother, is generally entitled to the custody of the infant children, inasmuch as they are their natural protectors for maintenance and education. The courts of justice may, in their sound discretion, and when the morals or safety or interest of the child strongly require it, withdraw the infant from the custody of the father or mother, and place the care of them elsewhere"—citing in support of the text In re Wollstonecraft, 4 Johns. Ch. (N. Y.) 80; Commonwealth v. Addicks, 5 Bin. (Pa.) 520; Ex parte Crouse, 4 Whart. (Pa.) 9; U. S. v. Green, 3 Mason, 482, Fed. Cas. No. 15,256; Case of Wellesley v. Duke of Beaufort, 2 Russell, 1; State v. Smith, 6 Greenl. (Me.) 462, 20 Am. Dec. 324. The same doctrine is set forth in sections 440 et seq., Church on Habeas Corpus.

In Mercein v. People, 25 Wend. (N. Y.) 64, 35 Am. Dec. 653, Chancellor Walworth, delivering the opinion of the court, says, among other things: "The father's right to his children is not absolute and inalienable. In those American cases which uphold to the greatest extent the right of the father, it is conceded that it may be lost by his ill usage, immoral principles or habits, or by his inability to provide for his children. But the great principle which runs through nearly all of the American and the earlier English cases is that which is stated by Thompson, Chief Justice, in the Matter of Waldron, 13 Johns. [N. Y.] 418, when speaking of the custody of the infant, in the case of the claim by the father, to such custody, viz.: 'It is the benefit and welfare of the infant to which the attention of the court ought principally to be directed.' As a necessary result of this principle, it follows that the custody of infant children must always be regulated by judicial discretion exercised in reference to their best interest. * * * The interest of the infant is deemed paramount to the claims of both parents. This is the predominant question which is to be considered by the court or tribunal before whom the infant is brought. The rights of the parents must in all cases yield to the interests and welfare of the infant." After discussing the fact that this regulatory power is in the sovereign or state, the opinion further proceeds: "It

seems, then, that by the law of nature the father has no paramount, inalienable right to the custody of his child. And the civil or municipal law in setting bounds to his parental authority, and in entirely or partially depriving him of it in cases where the interests and welfare of his child require it, does not come in conflict with or subvert any of the principles of the natural law. The moment a child is born it owes allegiance to the government of the country of its birth, and is entitled to the protection of that government. And such government is obligated by its duty of protection to consult the welfare, comfort, and interest of such child in regulating its custody during the period of its minority." Finally, the court says: "Upon a review of all of the authorities binding upon the courts of this state, I have come to the undoubting conclusion that the right of a father to the custody of his child is not absolute, and that its custody is referable to its interest and welfare, and is to be selected by the court in the exercise of a sound judicial discretion, irrespective of the claims of either parent. This conclusion is warranted by the law of the state, as well as by the law of nature. A sense of parental duty ought ever to withhold a parent from pressing his or her claims to the custody of a child whenever the true interest of such child forbids it; and, whenever this parental obligation fails to influence the conduct of the parent, it is fortunate that the enlightened principles of our law authorize our courts to interfere in behalf of the child." See, also, State v. Smith, supra, which was a case where the father was seeking to recover his children from the custody of the grandfather, and relief was refused.

In the case of United States v. Green, supra, where the contest was between the father and grandfather, who were citizens of different states, over the custody of the child, the court, quoting approvingly from the opinion in the case of State v. Smith, above referred to, Mr. Justice Story, delivering the opinion, said: "As to the question of the right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the benefit of the infant, the law presuming it to be for his interest to be under the nurture and care of its natural protector, both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw it from other persons, it will look into all the circumstances, and ascertain whether it will be for the real, permanent interests of the infant; and, if the infant be of sufficient discretion, it will also consult its personal wishes. It will free it from all undue restraint and endeavor, as far as possible, to administer a conscientious, parental duty with reference to its welfare. It is an entire mistake to suppose that the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody." See State v. Libbey, 44 N. H. 321, 82 Am. Dec. 223; also, note in Matter of Scarritt, 43 Am. Rep. 779; In re Bort, 25 Kan. 308, 37 Am. Rep. 255. It is said in 21 Am. & Eng. Ency. Law (2d Ed.) p. 1037 et seq., that "the guiding consideration by which the court will be influenced in determining the proper parent or other person to whom the custody of the child will be granted is always the welfare of the child"—citing in note 1 Leading Cases from England, Canada, and America in support of the text.

The following citations from our own reports are likewise in point: Legate v. Legate, 87 Tex. 248, 28 S. W. 281; Peese v. Gellerman, 51 Tex. Civ. App. 39, 110 S. W. 196; Parker v. Wiggins, 86 S. W. 788; White v. Richeson, 94 S. W. 202; State v. Deaton, 93 Tex. 243, 54 S. W. 901; Schneider v. Schwabe, 143 S. W. 265. In Legate v. Legate, supra, it was held that the law recognized the parent as the natural guardian entitled to the custody of the minor, so long as he discharged the obligation imposed upon him; but added that it did not recognize any property interest in the child, and that the state as its protector, interested in its proper education, had the right, in proper cases, to deprive a parent of its custody, when demanded by the interest of the child and of society. The same doctrine was recognized in the case of Schneider v. Schwabe, supra, wherein a writ of error was denied by the Supreme Court. Many cases hold that where the parent has voluntarily surrendered the custody of his child, or abandoned it to others, he will be denied its custody where upon application it appears that it is for the best interest of the child to remain with those to whom its custody had formerly been given. This is especially true where it is shown that it is well provided for in its new home, is surrounded by influences likely to promote its best interest, and where a tender relationship has sprung up between the child and those with whom it is living. See State v. Libbey, supra. All of the cases cited recognize the fact that if, for any substantial reason, it appears to the trial court that the parent is an improper person to have control and care of his child especially where it has been given to another, it will not disrupt the new relationship and return the child to the custody of its parent; and in State v. Libbey, supra, it was held to be within the sound discretion of the court, whether the custody of the child would be given to the father, and that in determining the question the court will consider, not only the fitness of the father for the trust, but the condition of the child with the person from whose custody it is sought to be taken, its relationship to such person, the present and prospective provision

for its support and welfare, the length of its residence there, and whether with the consent of its father, and the understanding, tacit or otherwise, that it should be permanent, the strength of the ties that have been formed between them, and, if the child has come to years of discretion, its wishes upon the subject.

We do not think the cases cited and relied upon by appellant contravene the doctrine here announced. In the Deaton Case, 93 Tex. 243, 54 S. W. 901, there was no evidence that the mother who was the applicant was an unfit person for the custody of the child, nor did the court find as here that it would be for the best interest of the child to remain with respondent. Neither was it held in the case of ,Watts v. Lively, 60 S. W. 676, that the father was not a fit person to be given the custody of his child; but it was held that the mere fact that the child would be more comfortably reared with its grandparets was not enough to authorize the court to disregard the father's right. It is true that many of the cases are made to turn upon the fact that the father had, prior thereto, voluntarily surrendered the custody of the child to the care of the persons from whom he sought to remove it; but this does not seem to be an essential requisite. We take it that whenever the court from all the circumstances in evidence finds as a conclusion of fact that the best interest of the child will be subserved by awarding its custody to persons other than its parents that this will be done irrespective of any other consideration. But in the instant case the children were voluntarily relinquished by appellant not, it is true, to the respondents, but to their mother. During her custody of them it seems that they became alienated from their father, and are now disinclined to return to him. The court no doubt took all these matters, as well as others shown by the record, into consideration in determining what was for the best interest of these children.

[2] In the present case, the father having voluntarily surrendered them to their mother, she took them and for two years cared for and performed all the duties of a mother and father as well. There they naturally, if not before, imbibed and became imbued with their mother's side of the unfortunate differences which terminated in a legal separation of their parents. During these two years relator seems rarely to have seen them, and failed to contribute to their support and maintenance, but all these duties devolved upon the mother, who faithfully discharged them with love and affection till death, at which time they followed her remains to Austin, where the respondents reside, who after the burial took charge of them. Here they found refuge in homes of culture and refinement with respondents, their relatives, who, the record shows, are willing and amply able to maintain, rear, and educate them. A tender and affectionate regard has sprung up between the children and respondents; they are anxious to remain, and are being reared and educated under Christian influences, presumably happy and contented in their new homes.

The trial court in the exercise of its discretion has determined not to disturb existing conditions on the ground that it will conserve the best interest and welfare of said children to remain with respondents; and, under all the circumstances disclosed by the record, we do not feel justified in saying that its discretion has been abused, for which reason said judgment is affirmed.

Affirmed.