SCHNEIDER et al. v. SCHWABE.†

(Court of Civil Appeals of Texas. San Antonio. Jan. 3, 1912. On Motion for Rehearing, Jan. 31, 1912.)

1. HABEAS CORPUS (§ 99*)—CUSTODY OF CHILDREN—WELFARE OF CHILD.

While parents have a natural right to the custody of their children, the welfare of the children is the controlling consideration.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. § 99;* Parent and Child, Cent. Dig. §§ 4–22.]

2. HABEAS CORPUS (§ 99*)—CUSTODY OF CHILDREN—QUESTION OF FACT.

Where the custody of a child is in controversy between the parents and others desiring to support and maintain the child, the question of which home is the most suitable for the child is a question of fact.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 99.*]

On Motion for Rehearing.

3. HABEAS CORPUS (§ 85*)—CUSTODY OF CHILDREN—EVIDENCE—SUFFICIENCY.

In habeas corpus by a mother to obtain custody of her children, whom she had placed in the care of their paternal uncle upon the death of their father, evidence *held* sufficient to sustain a finding denying her right to custody.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 85.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Habeas corpus by Rosa Schneider and another against Henry Schwabe. From a judgment for defendant, plaintiffs appeal. Affirmed.

Ryan & Ryan, for appellants. Schleicher & Wallace, for appellee.

FLY, J. On April 1, 1911, Rosa Schneider, joined by her husband, Henry Schneider, applied for a writ of habeas corpus to recover of appellee the custody of Emil and Katie Schwabe, her two minor children by Ed. Schwabe, a former husband. The cause was heard, and it was the judgment of the court that it was for the best interests of the minors that appellee's custody of them be not disturbed, and that they be remanded to his custody.

In 1901 Ed. Schwabe, then the husband of Rosa Schneider, died in De Witt county, Tex., leaving surviving him Rosa, his wife, and two children, Emil and Katie. He was a renter and owned no property, except a few chattels. At the time of his death, the boy was 4 years old and the girl 5 or 6 months old. Before the death of Ed. Schwabe, he had placed his son, Emil, in the hands of Henry Schwabe, the appellee herein, to take charge of and support him, and appellee and his wife have had the child in their home ever since, with the knowledge and consent of Rosa Schneider. Henry Schwabe and his wife have no children, and he is financially able to properly care for and educate the children. When Katie was

7 months old, her mother left her in charge of one Knipper, a poor man with eleven children of his own. In 1903 Henry Schwabe was appointed her guadian, and took possession of her through an order of the district court of De Witt county. Rosa Schneider removed to San Antonio in 1901, and married Henry Schneider in 1902, but seemingly took no interest in the welfare of her children, and made no demand for the children until she and her husband failed to get a small sum of money belonging to the children, a short while before this suit was filed. Great affection exists between the children and Henry Schwabe and wife.

The children were practically abandoned by their mother for 9 years, and during that time she had borne three children to Henry Schneider. He is 40 years of age, and is a waiter in a restaurant, earning $40 a month, and he claims to get $40 to $45 a month in tips. No request was made for the children before this suit was instituted. Henry Schneider has two children by a former wife, in Florida, a boy 17 and a girl 14 years of age, who are being supported by their grandmother. Henry Schwabe is a prosperous farmer, able and willing to properly support and educate the children, as he has been doing for years. Emil testified at the trial, and stated that he did not wish to leave his uncle. The latter has a farm, while the appellants are living in a rented house in the city of San Antonio.

[1] Rosa Schneider parted with the possession of her children, and for nine years contributed nothing to their support, and took little or no interest in them. One was a seven months old babe, whom she left in the hands of a poor man with a large family, and came to San Antonio and married and gave birth to another family. While recognizing the natural right that parents have to the custody of their children, the children have rights that are higher and of more importance to state and society than the naked right of parents to their custody; and, if their interests can be better conserved by leaving or placing them in charge of some one who can better protect them from the evils that threaten the lives and destinies of the young, the state has the authority, and it is its bounden duty, to place them in that custody. No sentimentality should attend a proceeding of this character, but the permanent interest and welfare of the child should be the great aim and end to be attained. Under the facts of this case, if the interest and happiness of the children are to be consulted, there can be no doubt that the children will be more kindly nurtured and trained by their uncle, who is in comfortable circumstances on a farm in De Witt county, away from the seductive influences of a modern city, than in a rented house in the city with three other children of the half blood, dependent upon the exertions of a stepfather getting a sal-

ary of $40 and the uncertain stipends of those who may patronize the restaurant in which he is employed. With the high price of every necessity of life, scant provision could be made for seven persons, leaving out of view the chances of a still larger family, and the possible misfortune of losing his employment. The aunt and uncle are above reproach; they have been caring for and educating the children, and the children are satisfied and happy. Appellants have been just as able for ten years as they are now to maintain and support the children, but never sought to take charge of them until they were refused the money, and after the children had reached an age that they might be useful. The facts are much stronger in this case than in the case of State v. Deaton, 93 Tex. 243, 54 S. W. 901, for in that case the mother had no possible way to care for the child for the two years that it was away from her; but she married at the end of that time and immediately applied for her child, and, when her application was denied, filed suit for it. Her second husband had a good home, consisting of 200 acres of land, and stock and other personal property.

[2] We think, however, that matters of this character are questions of fact to be determined, in the first instance, by the trial court, and then by the Court of Civil Appeals; those two tribunals being vested by law with the sole authority to consider questions of fact. That position was taken in the well-considered case of Legate v. Legate, 87 Tex. 248, 28 S. W. 281, wherein it was said: "The question as to whose custody will be most beneficial to the infant is one of fact of which this court has no jurisdiction, but which is to be determined, in the first instance, by the district court, upon hearing all the evidence tending to shed any light upon these two homes and the people inhabiting them, including their entire connection with, affection for, and present and future ability to care and provide for, this little girl, in order that the court may be able to determine upon the whole case the difficult question of fact above stated."

In the Legate Case it was declared that the child "is entitled to that home and environment which will probably best promote the interest of the infant," and that proposition is not disputed, in terms at least, in the Deaton Case. Doubtless, as said in the Deaton Case, "God, in his wisdom, has placed upon the father and mother the obligation to nurture, educate, protect, and guide their offspring;" but when for years they fail to perform those natural duties, and have, without excuse, committed the care of their children of tender years to other and more willing hearts and hands, the rule is that the welfare of the children, and not the desires, whims, or newly developed affection of the parents, should be consulted, and should

control in adjudicating the custody of the children. Peese v. Gellerman, 51 Tex. Civ. App. 39, 110 S. W. 196.

The judgment will be affirmed.

On Motion for Rehearing.

[3] Ed. Schwabe died in 1901, and in the following year his widow, Rosa, married her present husband, who was in just as good circumstances financially then as at this time, and yet for nine years no effort was made to obtain possession of the children, and no desire evinced to even see them. The financial condition of the couple has not changed to any great extent, for in all of those years they have accumulated nothing but a little furniture. This is no reproach to them, but it indicates that their status is a fixed one. In an occupation in which there can be no reasonable hope for promotion, after years of labor for the same firm, Henry Schneider is getting only $40 a month as a waiter. He has two children by a former wife and three by the present one, and if the two Schwabe children are added to the household, the seven people, not taking into account the children by a former wife, who seem to have been confided to the care and protection of their relatives, must be fed and clothed, the five children must be educated, and all out of a fixed salary of $40 a month. The rent for the two rooms about which Schneider testified merely pays the rent of the house. It is true that Schneider testified that he received enough in tips to raise his earnings to from $75 to $85, but the financial standing of a man cannot be based on the uncertain gratuities of a restaurant-visiting public, and the fate of little children cannot be made to turn on any such floating, fluctuating income.

It is a singular fact that no solicitude was manifested about the children during nine years or more, and at last, when it was tardily evinced, it followed a refusal upon the part of those who had been caring for the children · to put in the hands of the mother and her husband the small sum of money inherited by the children from their father. If Mrs. Schneider had been prevented, through the years of her second marriage, by poverty or misfortune, ill health or any other untoward event, from reclaiming her children, there might be excuse for her unnatural neglect of the children for so long a time, but none of those facts existed; the evidence tending to show that at any time after the second marriage she was fully as competent to care for her children as at the time she demanded their custody. There must have been some other motive than motherly love that caused the belated effort to obtain custody of her children, and the evidence shows that the motive was to obtain certain money belonging to the children. Rosa Schneider testified that they had demanded the money from Henry Schwabe; and further: "I did not undertake this suit until after I had been turned down in my demand for that money that I worked for." She had receipted to the administrator for $310.25 in 1901, the whole of the cash belonging to the estate of her deceased husband, and had sold her life estate in a tract of land for $50, had then abandoned her children, and still was not satisfied, and demanded the money—the miserable pittance —of her children. From these facts, the trial judge was justified in finding that she was not worthy to be made the custodian of her children.

It is earnestly contended that in this opinion we are in antagonism with and disregarded several decisions of other Texas courts, but there is no conflict. Each one of the cases was decided upon the peculiar facts, as is this, and no conflict is possible. The trial court has by its judgment decided that Rosa Schneider is not worthy to have the care and rearing of her children, and the facts justify the decision. In the case of Peese v. Gellerman, 51 Tex. Civ. App. 39, 110 S. W. 196, this court sustained a judgment denying a father the custody of his child, and the Supreme Court refused a writ of error. The father in that case was honest and upright, and well able to provide for his child; but the lower court placed it in the custody of an aunt, in whose care it had been for the eight years of its life. This court said: "If a man has voluntarily surrendered the control of his child for the first seven or eight years of its life, and permitted some one else to feed, clothe, and care for it, there is not much room for any sentimental dissertation on the subject of a court sundering the ties existing between the father and child. It is unfortunately the case that these ties are sometimes forgotten and disregarded until the child has reached an age when it may be useful·to the parent, and then they are invoked. Such resurrected affection may well be viewed with suspicion, and the parent should be required to show that the interest of the child will be subserved by having its custody returned. If the doctrine of the Missouri case, cited with approval in the case of State v. Deaton, to the effect that, when a father sues for the custody of a child, no burden would rest upon him, except to prove the relationship, be the true one, still, when it appears that he has voluntarily parted with the custody of his child, contributed little or nothing to its support, and allowed some one else to do what he should have done, it seems that any presumption that might arise as to his peculiar fitness to rear the child would be destroyed; and that he would then be required to establish his superior fitness before he could be awarded its custody. There is no presumption that the promptings of parental affection will cause a father to tenderly care for his child in the future, when he has failed to so act in the past." The language quoted applies

with peculiar force to this case, which is a stronger case, for the reason that it appears that, after having neglected her children for nine years or more, the mother sought to deprive them of the small pittance left them by their father, and, failing to obtain it in that way, sought to obtain it by gaining the custody of the persons of the children. They had also reached an age when their labor would be valuable; one of them being a sturdy boy 13 or 14 years old.

The motion for rehearing is overruled.