MATTHEWS et al. v. KIRKLAND et al.*
(No. 88.)

(Court of Civil Appeals of Texas. Beaumont. March 30, 1916. Rehearing Denied April 26, 1916.)

1. APPEAL AND ERROR ⬦999(1)—REVIEW—QUESTIONS OF FACT.
   The verdict of a jury as to facts is binding upon the court on appeal.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3915, 3917–3921; Dec. Dig. ⬦999(1).]

2. PARENT AND CHILD ⬦2(3)—CUSTODY OF CHILD—BEST INTEREST.
   In suit by aunt and uncle of minor children against their father and stepmother for the custody of the children, a verdict that defendants were not and plaintiffs were proper persons to have the custody, and that the best interests of the children were subserved by being in plaintiffs' custody, warrants a decree for plaintiffs.
   [Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 16–24; Dec. Dig. ⬦2(3).]

3. APPEAL AND ERROR ⬦1050(1)—HARMLESS ERROR.
   Where, if the admission of testimony was error, the testimony was not of such character as probably to influence the result, the admission of the testimony is not reversible error.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Dec. Dig. ⬦1050(1).]

Error from District Court, Tyler County; A. E. Davis, Judge.

Suit by Alta Kirkland and another against George C. Matthews and another. From a judgment for plaintiffs, defendants bring error. Affirmed.

Powell & Huffman, of Jasper, and R. A. Shivers, of Woodville, for plaintiffs in error. Thomas & Wheat, of Woodville, for defendants in error.

BROOKE, J. This is the third appeal of this case. The former appeals are reported, to wit: Kirkland v. Matthews, 162 S. W. 375; Kirkland v. Matthews, 174 S. W. 830.

This is a suit brought by the appellees, Alta Kirkland and another for the custody of four minor children, namely, George Cade Matthews, Margaret Matthews, Claud P. Matthews, and Mary Julia Matthews, George C. Matthews being the father of said children, and Minnie Matthews, wife of George C. Matthews, being the stepmother of said children, the appellees being the aunt and uncle of said children.

Plaintiffs went to trial on their second amended original petition, alleging that on or about the 27th day of May, 1907, in Tyler county, Tex., Mrs. Margaret S. Matthews, who was a sister to the plaintiff Mrs. Alta Kirkland, and wife of the defendant George C. Matthews, departed this life, leaving the four minor children, the eldest being now a boy of 13, and the youngest being a girl aged 7; that the said Mrs. Margaret S. Matthews at and immediately before her death requested plaintiffs to adopt and take care of and control of said children; that after her death the defendant George C. Matthews acquiesced therein and gave to the plaintiffs the care and control of said children; and that the plaintiffs, in pursuance of said request, consented thereto, and carried said children to their home, where they have ever since remained. They further allege that they have no other children in their home, and since the said children have been members of their home they have become attached to them as if they were their own, and love them with a parental love, and have during all the time they have had charge and control of said children properly maintained and supported them, using all of their best energies to promote their health, comfort, happiness, and education, and that they are, in fact, able and willing to so continue said care and custody, and in every way qualified and the proper persons to have the custody of said children; that as the foster parents of said children, by reason of the long, continuous association with them, the said children have formed a lasting affection for the plaintiffs, and that the sundering of the ties existing between plaintiffs and the children would greatly mar the happiness of the children, and would not be for their best interest; that the father of said children voluntarily relinquished the care and custody of said children to plaintiffs for six years, in fact, all during the very infancy of the youngest, and when they were all small, and during the period of their lives when they were the most troublesome, and

that now, when the children have grown up to a useful age, the defendant for the first time seeks to regain their possession, and to sever the ties of love and affection that exist between them and the plaintiffs, which ties of love and affection the defendant himself brought about by his own acts and by the gift of said children to the plaintiffs; that it is the desire of said children to remain with the plaintiffs, and that they lived with and considered the plaintiffs as their mother and father, and that the relation between them is very close and affectionate, and that the said children now desire and request and are pleading that the plaintiffs retain their custody; that the defendant George C. Matthews is a day-laborer, and that his work and duties in connection therewith require him to remain away from home during the daytime, and oftentimes after night, at which times the care and custody of said children are left to the defendant Mrs. Minnie Matthews, the stepmother, who is charged with being a practical stranger to the children, and that during said times they are neglected, and that said George C. Matthews is in no position to perform the duties that, in a large part, at the ages of said children necessarily belong to women of respective families; that the defendant, having been away from the children for so many years, never having the care or performing his parental duties toward them while they were young, will not have the tender feelings toward them, nor they for him, as have the plaintiffs for the children, and the children for the plaintiffs; that said George C. Matthews has children of his own born during his second marriage; and that the stepmother of the minor children herein will not devote her time and attention to them, since she has children of her own to care for. The further charge is made that the mother of said Mrs. Minnie Matthews, and an inmate of her home, is afflicted with tuberculosis, her health is impaired, and the health of the children would, perhaps, become impaired if they were permitted to remain in said home.

Defendants filed their first amended original answer, alleging that it would be to the best interest of the children to be given to defendants, that they love said children as only a father and mother could, that they were well prepared to care for and educate the children, and that it was the desire of Mrs. Minnie Matthews, stepmother of said children, that defendants have the care and custody of said children, and denied all material allegations in plaintiffs' petition.

The court submitted the case on special issues as follows:

"Question No. 1: Are George C. Matthews and his wife, Minnie Matthews, fit and proper persons to have the care and custody of the four children? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

To this question the jury answered "No."

"Question No. 2: Are Alta Kirkland and her husband, Ed Kirkland, fit and proper persons to have the care and custody of the four children? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

To this question the jury answered "Yes."

"Question No. 3: Did George C. Matthews give Alta Kirkland and husband, Ed Kirkland, his four children, with the understanding and agreement that he was giving up his right to the custody and control of said children, and relinquishing all right to the custody and control of his children, and placing the custody and control of said children in the hands of Alta Kirkland and her husband, Ed Kirkland? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

To this question the jury answered "Yes."

"Question No. 4: Will the best interests of the children be subserved by placing their care and custody in the hands of George C. Matthews and wife, Minnie Matthews, or in the hands of Ed Kirkland and his wife, Alta Kirkland? If you find the fact to be that the best interests of the children will be subserved by placing them in the hands of George C. Matthews and his wife, Minnie Matthews, then you will answer this question with the word 'Matthews.' If you find the fact to be that the best interests of the children will be subserved by placing them in the hands of Ed Kirkland and his wife, Alta Kirkland, then you will answer this question with the word 'Kirkland.' But, if you find the fact to be that the interests of the children will be equally subserved by placing the children in the hands of either George C. Matthews and his wife, Minnie Matthews, or Ed Kirkland and his wife, Alta Kirkland, then you will answer this question with the word 'Equally.' "

To this question the jury answered "Kirkland."

"Question No. 5: Is the home of George C. Matthews and his wife, Minnie Matthews, a fit and proper home for the children? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

To this question the jury answered "No."

"Question No. 6: Was the understanding with George C. Matthews and Ed Kirkland and his wife, Alta Kirkland, at the time the children went to Kirbyville, that the children were going to their father's house to make their home? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

To this question the jury answered "No."

"Question No. 7: Who is the better able financially to raise the children, George C. Matthews or Ed Kirkland? You will answer this question with the word 'Matthews' or the word 'Kirkland,' but, if you find that one is just about as able financially as the other to raise the children, then you will answer this question with the words 'About the same.' "

To this question the jury answered "Kirkland."

Judgment was rendered by the court upon the findings of the jury, giving the custody of said children to Alta Kirkland and Ed Kirkland. Motion for new trial was filed, and first amended motion, which were overruled. Appellants filed their appeal bond, and the cause is properly before this court for review.

Notwithstanding the fact that objection is made to the consideration of appellants' brief, because not having been filed with the clerk of the district court, and being filed in this court too late, and that objection is made to the consideration also of appellants' assignments, we will consider the brief and assignments, although it must be confessed they

are subject in many ways to the criticism directed against them.

By their first assignment of error, appellants challenge the verdict of the jury as being contrary to the evidence, in this: That there is no evidence to show that George C. Matthews and his wife are not moral, upright people, suitable persons to have the custody and care of the children of George C. Matthews, and the proposition is submitted that George C. Matthews being the father of the said minor children, he is entitled to the care and custody of his children, unless it is shown that he is unfit morally to have the care and custody of said children.

Appellants seem impressed with the idea that the courts of our state have held that it is incumbent upon the person or persons seeking to take the care and custody of minor children from their parents to show that the said parent or parents are unfit morally, or otherwise, to raise said children. In order that we may have a clear understanding of the holdings of the courts on this proposition, it would, perhaps, be well to briefly review the authorities.

In the case of Legate v. Legate, which was decided by our Supreme Court, and reported in 87 Tex. 248, 28 S. W. 281, the court says:

"The law recognizes the parent as the natural guardian of, and entitled to the custody of, his minor child, so long as he discharges the obligation imposed upon him by social and civil law of protecting and maintaining his offspring. It does not, however, recognize in him any property interest in his child, but merely accords to him the benefits resulting from the child's services during minority, and such probable benefits as may result to him thereafter, in return for the tender care, the anxious solicitude and the physical, mental, and moral training bestowed by the parent, as well as the pecuniary and social benefits derived by the child from the parent. The state, as the protector and promoter of the peace and prosperity of organized society, is interested in the proper maintenance and education of the child, to the end that it may become a useful instead of a vicious citizen; and while, as a general rule, it recognizes the fact that the interest of the child and of society is best promoted by leaving its education and maintenance during minority to the promptings of paternal affection, untrammeled by the surveillance of government, still it has the right, in proper cases, to deprive the parent of the custody of his child, when demanded by the interest of the child and society. The one most vitally interested, however, in its custody during the formative period of its character is the one whose present and future happiness and tendencies towards good or evil will be most affected by its early environments and its physical, mental, and moral training—the child itself. The right of the parent or the state to surround the child with proper influences is of a governmental nature, while the right of the child to be surrounded by such influences as will best promote its physical, mental, and moral development is an inherent right, of which, when once acquired, it cannot be lawfully deprived. Ordinarily the law presumes that the best interests of the child will be subserved by allowing it to remain in the custody of the parents, no matter how poor and humble they may be, though wealth and worldly advancement may be offered in the home of another. Where, however, a parent, by writing *or otherwise* [italics ours], has voluntarily transferred and delivered his minor child into the custody and * * * control of another, as in the case at bar, and then seeks to recover possession of the child by writ of habeas corpus, such parent is invoking the exercise of the equitable discretion of the court to disrupt private domestic relations which he has voluntarily brought about, and the court will not grant the relief unless, upon hearing of all the facts, it is of opinion that the best interests of the child would be promoted thereby. It is sometimes said that such a voluntary transfer is 'void,' or that it is 'contrary to public policy'; but the cases using such language show that it is not used in an absolute sense, but in the sense that such transfer is no impediment to the action of the court in determining what is best for the interest of the child. The law does not prohibit such a transfer, but, on the contrary, allows the child to reap the benefit thereof when it is to its interest so to do. The attempted transfer is not a contract, and cannot be enforced as such, because neither the child nor its custody was a subject-matter of contract. The fact that in pursuance of this attempted contract the parents delivered the child to appellees, and appellee received the same for a lawful purpose, new domestic relations thereby being formed for the child, renders the possession by appellee of the child prima facie lawful. The parents, on the one hand, offer to take back their child to the family circle, from whence they voluntarily allowed it to be taken nearly two years since, at the tender age of three months; and, on the other hand, its foster parents insist upon its remaining with all the privileges of an adopted child, in the home where it has been tenderly and lovingly cared for through the critical period of infancy. Two homes are thus offered the child, who is in no wise responsible for this unfortunate controversy, *and has not sufficient discretion to select.* [Italics ours.] We hold, as a matter of law, that it is entitled to the benefit of that home and environments which will probably best promote the interest of the infant. The question as to whose custody will be most beneficial to the infant *is one of fact, of which this court has no jurisdiction, but which is to be determined in the first instance by the district court,* upon hearing all the evidence tending to shed any light upon these two homes, and the people inhabiting them, including their entire connection with, affection for and present and future ability to care and provide for this little girl, in order that the court may be enabled to determine, upon the whole case, the * * * question of the fact above stated. [Italics above ours.]"

The jury in the instant case has passed upon this question of fact, and by their answer have said that George C. Matthews and his wife, Minnie Matthews, are not fit and proper persons to have the care and custody of the minor children, and that Alta Kirkland and her husband, Ed Kirkland, are fit and proper persons to have the said care and custody. They have further passed on the question, and by their answers have said that George C. Matthews did relinquish to Alta Kirkland and her husband the four minors, with the understanding that he was giving up his rights to the custody of said children many years ago, and they have said that the best interests of the children in this case will be subserved by placing their care and custody in the hands of Alta Kirkland and Ed Kirkland, and, among other things, they have answered that the said Kirkland and his wife are better able financially to raise the said children.

In the case of Ball v. Smith, reported in 156 S. W. 576, the court goes into this question at length:

"By natural law the custody of the child is given to the parent, for the reason that it is presumed that out of this relationship flow such love and affection for the child as would promote its best interests; but this is not an inalienable or paramount right. In the event of a failure on the part of the parent from any cause to perform this sacred trust, the state has the right to interfere and take from his custody the child, to the end that it may be properly reared and brought up. This is done in the interest of society and good government. It is said by Chancellor Kent (volume 2, pp. 220, 221) that: 'The father, and on his death the mother, is generally entitled to the custody of the infant children, inasmuch as they are their natural protectors for maintenance and education. The courts of justice may, in their sound discretion, and when the morals or safety or interest of the child strongly require it, withdraw the infants from the custody of the father or mother, and place the care of them elsewhere' —citing in support of the text In re Wollstonecraft, 4 Johns. Ch. (N. Y.) 80; Commonwealth v. Addicks, 5 Bin. (Pa.) 520; Ex parte Crouse, 4 Whart. (Pa.) 9; United States v. Green, 3 Mason, 482, Fed. Cas. No. 15,256; Case of Wellesley v. Duke of Beaufort, 2 Russell, 1; State v. Smith, 6 Greenl. (Me.) 462, 20 Am. Dec. 324. The same doctrine is set forth in section 440 et seq., Church on Habeas Corpus.

"In Mercein v. People, 25 Wend. (N. Y.) 64, 35 Am. Dec. 653, Chancellor Walworth, delivering the opinion of the court, says, among other things: 'The father's right to his children is not absolute and inalienable. In those American cases which uphold to the greatest extent the right of the father, it is conceded that it may be lost by his ill-usage, immoral principles, or habits, or by his inability to provide for his children. But the great principle which runs through nearly all the American and the earlier English cases is that which is stated by Thompson, C. J., in the Matter of Waldron, 13 Johns. (N. Y.) 418, when speaking of the custody of the infant, in the case of the claim by the father, to such custody, viz.: "It is the benefit and welfare of the infant to which the attention of the court ought principally to be directed." As a necessary result of this principle it follows that the custody of infant children must always be regulated by judicial discretion exercised in reference to their best interest. * * * The interest of the infant is deemed paramount to the claims of both parents. This is the predominant question which is to be considered by the court or tribunal before whom the infant is brought. The rights of the parents must in all cases yield to the interests and welfare of the infant.' After discussing the fact that this regulatory power is in the sovereign or state, the opinion further proceeds: 'It seems, then, that by the law of nature the father has no paramount, inalienable right to the custody of his child. And the civil or municipal law in setting bounds to his parental authority, and in entirely or partially depriving him of it in cases where the interests and welfare of his child require it, does not come in conflict with or subvert any of the principles of the natural law. The moment a child is born it owes allegiance to the government of the country of its birth, and is entitled to the protection of that government. And such government is obligated by its duty of protection to consult the welfare, comfort, and interest of such child in regulating its custody during the period of its minority.' Finally the court says: 'Upon a review of all of the authorities binding upon the courts of this state, I have come to the undoubting conclusion that the right of a father to the custody of his child is not absolute, and that its custody is referable to its interest and welfare, and is to be selected by the court in the exercise of a sound judicial discretion, irrespective of the claims of either parent. This conclusion is warranted by the law of the state, as well as by the law of nature. A sense of parental duty ought ever to withhold a parent from pressing his or her claims to the custody of a child whenever the true interest of such child forbids it; and, whenever this parental obligation fails to influence the conduct of the parent, it is fortunate that the enlightened principles of our law authorize our courts to interfere in behalf of the child.' See, also, State v. Smith, supra, which was a case where the father was seeking to recover his children from the custody of the grandfather, and relief was refused.

"In the case of United States v. Green, supra, where the contest was between the father and grandfather, who were citizens of different states, over the custody of the child, the court, quoting approvingly from the opinion in the case of State v. Smith, above referred to, Mr. Justice Story delivering the opinion, said: 'As to the question of the right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the benefit of the infant; the law presuming it to be for his interest to be under the nurture and care of its natural protector, both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw it from other persons, it will look into all the circumstances, and ascertain whether it will be for the real, permanent interests of the infant; and, if the infant be of sufficient discretion, it will also consult its personal wishes. It will free it from all undue restraint and endeavor, as far as possible, to administer a conscientious, parental duty with reference to its welfare. It is an entire mistake to suppose that the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody.' See State v. Libbey, 44 N. H. 321, 82 Am. Dec. 223; also note in Matter of Scarritt, 43 Am. Rep. 779; In re Bort, 25 Kan. 308, 37 Am. Rep. 255. It is said in 21 Am. & Eng. Ency. Law (2d Ed.) p. 1037 et seq., that: 'The guiding consideration by which the court will be influenced in determining the proper parent or other person to whom the custody of the child will be granted is always the welfare of the child'—citing in note 1 leading cases from England, Canada, and America in support of the text.

"The following citations from our own reports are likewise in point: Legate v. Legate, 87 Tex. 248, 28 S. W. 281; Peese v. Gellerman, 51 Tex. Civ. App. 39, 110 S. W. 196; Parker v. Wiggins, 86 S. W. 788; White v. Richeson, 94 S. W. 202; State v. Deaton, 93 Tex. 243, 54 S. W. 901; Schneider v. Schwabe, 143 S. W. 265. In Legate v. Legate, supra, it was held that the law recognized the parent as the natural guardian entitled to the custody of the minor, so long as he discharged the obligation imposed upon him, but added that it did not recognize any property interest in the child, and that the state, as its protector, interested in its proper education, had the right, in proper cases, to deprive a parent of its custody, when demanded by the interest of the child and of society. The same doctrine was recognized in the case of Schneider v. Schwabe, supra, wherein a writ of error was denied by the Supreme Court. Many cases hold that, where the parent has voluntarily surrendered the custody of his child, or abandoned it to others, he will be denied its custody where upon application it appears that it is for the best interest of the child to remain with those to whom its custody had formerly been given. This is especially true where it is shown that it is well provided for in its new home, is surrounded by influences likely to promote its best interest, and where a tender relationship has sprung up between the child and

those with whom it is living. See State v. Libbey, supra. All of the cases cited recognize the fact that if, for any substantial reason, it appears to the trial court that the parent is an improper person to have control and care of his child, especially where it has been given to another, it will not disrupt the new relationship and return the child to the custody of its parent; and in State v. Libbey, supra, it was held to be within the sound discretion of the court whether the custody of the child would be given to the father, and that in determining the question the court will consider, not only the fitness of the father for the trust, but the condition of the child with the person from whose custody it is sought to be taken, its relationship to such person, the present and prospective provisions for its support and welfare, the length of its residence there, and whether with the consent of its father, and the understanding, tacit or otherwise, that it should be permanent, the strength of the ties that have been formed between them, and, if the child has come to years of discretion, its wishes upon the subject.

"We do not think the cases cited and relied upon by appellant contravene the doctrine here announced. In the Deaton Case, 93 Tex. 243, 54 S. W. 901, there was no evidence that the mother, who was the applicant, was an unfit person for the custody of the child, nor did the court find, as here, that it would be for the best interest of the child to remain with respondent. Neither was it held in the case of Watts v. Lively, 60 S. W. 676, that the father was not a fit person to be given the custody of his child; but it was held that the mere fact that the child would be more comfortably reared with its grandparents was not enough to authorize the court to disregard the father's right. It is true that many of the cases are made to turn upon the fact that the father had, prior thereto, voluntarily surrendered the custody of the child to the care of the persons from whom he sought to remove it; but this does not seem to be an essential requisite. We take it that whenever the court from all the circumstances in evidence finds as a conclusion of fact that the best interest of the child will be subserved by awarding its custody to persons other than its parents that this will be done irrespective of any other consideration. But in the instant case the children were voluntarily relinquished by appellant, not, it is true, to the respondents, but to their mother. During her custody of them it seems that they became alienated from their father, and are now disinclined to return to him. The court, no doubt, took all these matters, as well as others shown by the record, into consideration in determining what was for the best interest of these children.

"In the present case, the father having voluntarily surrendered them to their mother, she took them, and for two years cared for and performed all the duties of a mother and father as well. There they naturally, if not before, imbibed and became imbued with their mother's side of the unfortunate differences which terminated in a legal separation of their parents. During these two years relator seems rarely to have seen them, and failed to contribute to their support and maintenance, but all these duties devolved upon the mother, who faithfully discharged them with love and affection till death, at which time they followed her remains to Austin, where the respondents reside, who after the burial took charge of them. Here they found refuge in homes of culture and refinement with respondents, their relatives, who, the record shows, are willing and amply able to maintain, rear, and educate them. A tender and affectionate regard has sprung up between the children and respondents. They are anxious to remain, and are being reared and educated under Christian influences, presumably happy and contented in their new homes.

"The trial court, in the exercise of its discretion, has determined not to disturb existing conditions, on the ground that it will conserve the best interest and welfare of said children to remain with respondents; and, under all the circumstances disclosed by the record, we do not feel justified in saying that its discretion has been abused, for which reason said judgment is affirmed."

In the instant case the jury have answered that the father voluntarily surrendered these children to their aunt, and that she took and for many years cared for them and performed all the duties of a mother. The children are now of an age at which their wishes should somewhat be consulted. A tender and affectionate regard has sprung up between them and their aunt, Alta Kirkland, and we regard the instant case, especially in the light of the answers of the jury to the questions propounded by the court to them, as a much stronger case than the facts in the case just quoted.

In the case of Peese v. Gellerman, 51 Tex. Civ. App. 39, 110 S. W. 196, the court uses this language:

"It was alleged in the petition that a gift of the child was made by her father to her aunt, and the subject of the first assignment of error is the overruling of an exception to that allegation. The proposition is that the parent has no property interest in this child which is subject to be given away, and that he cannot relieve himself of his parental obligations to the child. While the proposition may be a correct one, and while, standing alone, an attempted gift of a child would be invalid, still the fact of the gift having been made would place the parent in the attitude of invoking the powers of a court of equity in seeking to regain possession of the child. Such being the case, the matter of the gift of the child was properly alleged and properly considered with the other facts in arriving at a conclusion as to where the custody of the child should be placed"—citing Legate v. Legate, 87 Tex. 248, 28 S. W. 281.

Continuing, the court says:

"The force of the opinion cited is parried in a later case by the Supreme Court in State v. Deaton [93 Tex. 243] 54 S. W. 901, but the allegation can be justified by the language of the last decision. The court said: 'When the parent has parted with the possession and control of his or her child and seeks to regain that possession through the courts, it becomes the duty of the court in a proper case to protect the children against the evil results that may flow to it from an improper direction through incompetent or disqualified parents.' If the transfer of the custody of the child should be considered in trying the case, it cannot be improper to allege it. If a man has voluntarily surrendered the control of his child for the first seven or eight years of its life and permitted some one else to feed, clothe, and care for it, there is not much room for any sentimental dissertation on the subject of the court sundering the ties existing between the father and child. It is unfortunately the case that these ties are sometimes forgotten and disregarded until the child has reached an age when it may be useful to the parent, and then they are invoked. Such resurrected affection may well be viewed with suspicion, and the parents should be required to show that the interest of the child will be subserved by having its custody returned. If the doctrine of the Missouri case, cited with approval in the case of State v. Deaton, to the effect that when a father sues for the custody of a child no burden would rest upon him, except to prove the relationship to be a true one, still, when it appears that he has voluntarily parted with the custody of his child, contributed

little or nothing to its support, and allowed some one else to do what he should have done, it seems that any presumption that might arise as to his peculiar fitness to rear the child will be destroyed, and that he would then be required to establish his superior fitness before he could be awarded its custody. There is no basis for a presumption that the promptings of parental affection will cause a father to tenderly care for his child in the future, when he has failed to so act in the past."

In the case of Schneider v. Schwabe, 143 S. W. 265, the court uses the following language:

"Rosa Schneider parted with the possession of her children, and for nine years contributed nothing to their support, and took little or no interest in them. One was a seven months old babe, whom she left in the hands of a poor man with a large family, and came to San Antonio and married and gave birth to another family. While recognizing the natural right that parents have to the custody of their children, the children have rights that are higher and of more importance to state and society than the naked right of parents to their custody; and, if their interest can be better conserved by leaving or placing them in charge of some one who can better protect them from the evils that threaten the lives and destinies of the young, the state has the authority and it is its bounden duty to place them in that custody. No sentimentality should attend a proceeding of this character, but the permanent interest and welfare of the child should be the great aim and end to be attained. Under the facts of this case, if the interests and happiness of the children are to be consulted, there can be no doubt that the children will be more kindly nurtured and trained by their uncle, who is in comfortable circumstances on a farm in De Witt county, away from the seductive influences of a modern city, than in a rented house in the city with three other children of their half blood, dependent upon exertions of a stepfather with a salary of $40 and the uncertain stipends of those who patronize the restaurant in which he is employed."

[1, 2] All the facts were heard by the lower court and by the jury, who passed upon the questions submitted to them by the said court. The jury have answered the questions in no uncertain terms. They saw and heard the witnesses as they testified. It was their province to pass upon the facts, and their verdict is binding as to this court. That verdict is that George C. Matthews and his wife are not proper persons, and that Alta Kirkland and her husband, Ed Kirkland, are fit and proper persons, to have the care and custody of the minor children in this case. The jury also passed upon the question as to whether Matthews gave to Mrs. Alta Kirkland these children, and they have said, taking all the facts that were before them, that the best interests of these children will be best subserved by placing their care and custody in the hands of Alta Kirkland and Ed Kirkland. They have also passed upon the proposition, as said above, that their best interests will be subserved financially while allowing the custody of these children to the said Alta and Ed Kirkland. These questions of fact have been decided by the jury, and there is testimony to support the findings.

[3] What we have said disposes of all the assignments, save and except the one calling in question the action of the court in permitting the plaintiff Alta Kirkland to testify to statements made by the minor children. If there was error in the action of the court in admitting this testimony, it was not of such character as probably influenced the result, and would not justify this court in reversing and remanding said cause.

Believing that the issues were properly submitted to a jury, that they have passed upon the same, and there being nothing to show that the said jury was influenced by any improper motive, the judgment of the court below is in all things affirmed.

It is so ordered.

