## CLARK v. HENDRICKS et ux.

(Court of Civil Appeals of Texas. San Antonio. Feb. 25, 1914.)

**1. APPEAL AND ERROR (§ 1048\*) — HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Any error in permitting a question on plaintiff's cross-examination in habeas corpus proceedings for the custody of plaintiff's infant child, as to what became of a cow he owned several years before, elicited to show plaintiff's thriftless character, was harmless, where plaintiff admitted that he was thriftless and never expected to have anything.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. § 1048.\*]

**2. APPEAL AND ERROR (§ 1051\*) — HARMLESS ERROR—ADMISSION OF EVIDENCE.**

In habeas corpus for custody of plaintiff's infant child, the admission of declarations by plaintiff's first wife as to his drinking habits was harmless, where there was sufficient evidence without such declarations to show plaintiff's unfitness to have such custody, and the findings as to plaintiff's drinking were based on his reputation and not on such declarations, and plaintiff admitted that he drank.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.\*]

**3. EVIDENCE (§ 152\*)—OPINION EVIDENCE — REPUTATION.**

Where the only reputation plaintiff had in any particular locality was formed in a certain county, evidence of his reputation there four or five years before trial was not incompetent, especially where there was nothing to indicate that his reputation had since changed for the better; the time elapsing since witnesses knew him there only going to the weight of their evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 441; Dec. Dig. § 152.\*]

**4. APPEAL AND ERROR (§ 1051\*) — HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Where plaintiff, in habeas corpus proceedings to procure custody of his child, admitted that he gambled, evidence as to what witnesses had been told as to plaintiff's gambling was not prejudicial to plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.\*]

**5. WITNESSES (§ 274\*)—CROSS-EXAMINATION.**

"Reputation" as to character, etc., is founded on what people say about one's actions and character, and reputation witnesses may be asked, on cross-examination, as to the sources of their knowledge.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 965, 966; Dec. Dig. § 274.\*]

**6. HABEAS CORPUS (§ 99\*)—CUSTODY—RIGHT OF PARENT.**

While the parent is usually entitled to the custody of his child, the courts will consult the child's best interest in awarding custody, especially where a parent has voluntarily parted with custody, and the child's present surroundings are better than they would be if in the parent's custody.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. § 99.\*]

Appeal from District Court, Bee County; F. G. Chambliss, Judge.

Habeas corpus by W. E. Clark against A. S. Hendricks and wife to procure the custody of a child. From a judgment awarding custody to defendants, plaintiff appeals. Affirmed.

Jones & Childers, of Sinton, for appellant. Dougherty & Dougherty and B. D. Tarlton, Jr., all of Beeville, for appellees.

FLY, C. J. Appellant applied for a writ of habeas corpus commanding appellees to bring his infant daughter, Winnie Josephine Clark, before the court, and prayed for her care and custody. The writ was awarded, and appellees answered by general demurrer and general denial, and specially answered that they were the grandparents of the child, an infant, one year of age; that her mother, their daughter, had died when said infant was only six days old, and she was given into their custody, by appellant, so long as the grandmother should live, and he promised to contribute to the support and maintenance of the child, but had failed and refused so to do, except in the sum of $7; that appellees had supported the child, and to some extent appellant also. They further alleged that appellant was not the proper person to have the care and custody of the child, that he was indolent and drank and gambled, and "his reputation is by no means the best," and that appellees were able to take care of the child and educate her. The custody of the child was awarded by the court to appellees. The evidence shows that Winnie Josephine was born on April 8, 1912, and that her mother died six days thereafter, on April 14, 1912. On the day of the burial of the mother appellant placed the infant in the custody of appellees. Appellant was shown to be thriftless, indolent, and unfit to have the custody of the infant. The grandparents are thrifty, respectable people, and the grandmother is well fitted to rear the little girl, having reared 10 children. She has taken excellent care of the child, and it is in fine health. Appellant married again in about four months after the death of his first wife, and has contributed very little to the support of the child. He is 28 years old, and married a girl 20 years old, and was expecting an addition to the family in a few weeks from the time of the trial. He was in debt when he married the present wife and has not paid off the debts. He testified as to his future prospects: "Judging from the success I have had in the past, if I have anything next year, it will be luck. If I expect to have anything that costs more than $1.50, I expect to have a streak of luck. If I have the luck that I have had in the past, I could not educate anything. I am not figuring on that luck." Appellant is of a wandering disposition and has lived in many places. He has accumulated nothing, and he, as well as every one who knows him, feels confident that it would be a marvelous thing if he ever does accumulate any property. The appellees have a nice farm, and there are only four in

the family, besides the infant. The family consists of appellees and a son and a daughter, twins, about 21 years of age. Appellees are very fond of the child.

[1] The first assignment of error complains of the action of the court in permitting appellant to be asked what became of a cow he owned in 1909, and his answer that he sold it. The question was asked on cross-examination, and the testimony was sought, along with other matters, to show the thriftless character of appellant. If it did not tend to show that, it was harmless, as is admitted by appellant.

[2] The second assignment of error complains of the admission of the declarations of his first wife as to his drinking habits. The cause was tried by the court, without a jury, and there was sufficient evidence outside of the declarations of the wife to show the utter unfitness of appellant to have charge of the child. It was proved that his reputation for "industry, honesty, sobriety, and morality" was bad. He admitted that he was in the habit of drinking, and admitted that he had nothing. The court, in his findings of fact, showed that he found, as to appellant's drinking, on his reputation and not on what he found the deceased wife had said. Andrews v. Key, 77 Tex. 35, 13 S. W. 640.

[3] Appellant was a rover from one community to another in and out of Texas. He had lived during his 28 years of life in at least three states, in at least five counties, and numerous communities. Since 1907 he had been moving from one place to another. If appellant had any reputation it was formed in Hill county, where he lived longer than in any other county, and the reputation he formed there four or five years before the trial was not incompetent, especially as there was nothing to indicate that there had been any change for the better in his reputation. The time that had elapsed since the witnesses as to reputation knew him may have gone to the weight, but not to the admissibility of the evidence. Mynatt v. Hudson, 66 Tex. 66, 17 S. W. 396; Brown v. Perez, 89 Tex. 282, 34 S. W. 725; Rice v. Ward, 93 Tex. 532, 56 S. W. 747.

[4, 5] Appellant admitted that he had gambled, and we fail to see how the evidence of witnesses as to what had been told them as to his gambling could have injured him. The testimony of which complaint is made was elicited by appellant on the cross-examination of the witnesses as to their knowledge of the reputation of appellant. The witnesses told that they had heard that he gambled. Reputation is founded on what people say about a man's actions and character, and, when cross-examined, witnesses as to reputation are authorized to give their source of knowledge.

[6] The evidence sustains the conclusion of the trial court that the best interests of the infant will be subserved by returning it to the custody of its grandparents, to whom appellant had given its custody for the life of the grandmother. The parent is usually entitled to the custody of his or her child, but courts can and will consult the interest of the child above all other things, and when a parent has voluntarily parted with the care and custody of a child, and the surroundings of the child, morally and otherwise, are better in its present environments than they would be in the custody of the parent, the law will consult the interests of the child and place them above all other considerations. Legate v. Legate, 87 Tex. 248, 28 S. W. 281; White v. Richeson, 94 S. W. 203; Peese v. Gellerman, 51 Tex. Civ. App. 39, 110 S. W. 196; Schneider v. Schwabe, 143 S. W. 265; Ball v. Smith (Tex. Civ. App.) 156 S. W. 576.

The court was justified in concluding: "That W. E. Clark has failed to develop any capacity for supporting or maintaining a family, and, judging the future by the past, seems bent on pursuing his well-worn road of idleness and nonaccumulation of this world's goods." This could, with great propriety, be said of a man who has lived to be 28 years of age and has not acquired a dollar's worth of property, who still owes for the medical services and funeral expenses of his first wife, who has no hope of ever having as much as $1.50, who is not supporting his second wife, but is living on the bounty of his second father and mother-in-law and whose child is being cared for by his first parents in law.

The judgment is affirmed.