### WAROFF v. HAIGHT et al.

### No. 5660.

Court of Civil Appeals of Texas. Amarillo.

Jan. 8, 1945.

Rehearing Denied Feb. 5, 1945.

• W. C. Vinyard, E. T. Miller, A. A. Lumpkin, and W. J. Flesher, all of Amarillo, for appellant.

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellees.

STOKES, Justice.

This action was instituted by the appellant, John W. Waroff, against the appellee, Helen Haight, in the nature of an application for a writ of habeas corpus to recover the custody of Susan Waroff, the three and one-half year old daughter of the appellant and his deceased wife, Ruth Waroff, who was the daughter of appellee, Helen Haight. The case was submitted to the court without the intervention of a jury and resulted in a judgment denying appellant's application and placing the custody of the child with the appellee, from which the appellant has perfected an appeal to this Court.

Appellant submits the case upon a single assignment of error in which he asserts that he is the natural guardian of the child and as such he is entitled to her custody as against appellee, Helen Haight, her maternal grandmother, and that the trial court erred in refusing to award such custody to him.

The record shows that the child Susan was born at Monrovia, California, February 28, 1941; that when she was about three months of age she developed a severe case of eczema which covered her entire face and a large portion of her body; and that appellant and the child's mother placed her in a hospital under the care of competent physicians who treated her for several weeks. The physicians finally informed appellant and his wife that they had done about all they could for the child and she was then removed from the hospital. Appellee, Helen Haight, learned of the child's condition and she furnished the funds for her daughter to return to Amarillo with the child where she was placed under the care of other physicians and given diligent treatment to which she responded and practically recovered from the disease within two or three months. The child's mother then returned to California, taking the child with her, and shortly after they arrived there, the eczema recurred and the child's condition again became serious and, upon being returned to Amarillo, she again recovered. At the time of the trial the disease had apparently disappeared but since her recovery she has been allergic to certain foods and pets, such as cats and dogs, from all of which it is necessary to protect her to prevent a recurrence of the disease. The testimony further showed that even woolen blankets placed over her at night and woolen clothing, unless properly arranged and protected, will cause a return of the disease, and that the child's health is delicate, demanding the closest attention and greatest diligence in order to protect her from the malady. The testi-

mony further showed that during a large part of the child's life she had lived in the home of the appellee; that appellant was inducted into the Armed Services in March or April 1943, where he remained for about seven months, during most of which time the child and her mother lived at the home of appellee near Amarillo, and after appellant was honorably discharged from the army in October 1943 the child and her mother continued to live with the appellee most of the time until the mother's death on July 9, 1944. The testimony showed that during most of the time the child was living in appellee's home, she gave it her personal attention and that her solicitude and diligence in treating and caring for the child was constant and of the highest order. In fact, appellant himself testified that he had no complaint as to the manner in which appellee had treated and provided for the child. It was shown, without dispute, that appellee was greatly devoted to the child and that the child was very fond of the appellee. The record further reveals that the child's mother was the daughter of the appellee by a former marriage; that appellee's present husband was also formerly married and had two boys; that there were later born to them two other boys and all of these children were reared in their home, and that appellee therefore had had much experience in child culture; and that she was forty-one years of age, in good health, had recently purchased a home in Amarillo, and was possessed of a comfortable bank account and other property.

There was no substantial testimony that appellant was not a respectable, honest, and fairly industrious man. He and his wife had been separated for some time before her death and she had procured a divorce from him and had been awarded the custody of the child but, according to the record before us, he had not been guilty of any serious misconduct. The testimony showed, also, that appellee was in no way responsible for the disruption of the marital relations between appellant and his wife, but rather that she made every reasonable effort to prevent it and to induce them to continue their marital relationship. Appellant testified that he was employed as a motorman on a streetcar line in Los Angeles, California, at a salary of approximately three hundred dollars per month; that he was living in rented rooms in a private home in Los Angeles and that his mother and her husband, together with his aunt, also lived in Los Angeles. He testified, however, that he had not arranged with the people with whom he was living to permit him to bring his little daughter Susan to their home; that he had not spoken either to his mother or his aunt about assuming responsibility for the care of the little girl; and that he had no particular arrangements with anyone, either to take care of the child or permit him to bring her into their home. He said that he began work about two o'clock in the afternoon and worked steadily each day until eleven o'clock at night.

Appellant asserts that ordinarily the law presumes the best interests of a child whose custody is in dispute will be subserved by allowing it to remain in the custody of its parent or parents, no matter how poor and humble they may be, although wealth and worldly advantages may be offered in the home of others, and cites us to the cases of Legate v. Legate, 87 Tex. 248, 28 S.W. 281; State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901; and Binion v. Mathis, Tex.Civ.App., 171 S.W. 2d 512, and a number of other cases of like import. There is no question that, as an abstract proposition of law, this contention of appellant is correct. But the courts of this State, and of every other State in the Union, so far as we know, adhere to the sound principle that, under such circumstances as those presented in this case, the best interests of the child is the paramount question to be resolved and, as compared to it, all other questions become incidental. Ex parte Sams, Tex.Civ.App., 161 S.W. 388; Rosas v. Valdez, Tex.Civ. App., 280 S.W. 294; Clark v. Hendricks, Tex.Civ.App., 164 S.W. 57; McAdams v. Sykes, Tex.Civ.App., 269 S.W. 505. We make special reference to the case of Ex parte Sams, supra. That case was very similar to the instant case and the opinion applies the principles of law which must govern us in the disposition of this case. As we have shown, the testimony was conclusive that appellee is able, willing, and anxious to assume full custody of the child, together with all of the burdens and responsibilities that go along with it. Her experience and success in rearing her own children and those of her husband by his former marriage, together with the ministrations, care, and attention which she has devoted to this child during most of

its life, equip her with qualifications for its custody and nurture that could be possessed by no other person. The child is very nervous, her health is exceedingly delicate, and it was abundantly indicated by the undisputed testimony that unless she is given extraordinary care by a person who understands her disposition, her physical condition, and the disease with which she has been afflicted, together with the numerous influences to which she is allergic, the disease will, in all probability, recur and her health, even her life, be jeopardized. Appellee is financially able to assume the responsibility for the child's rearing and she is physically qualified to administer unto its needs. On the other hand, if appellant should be awarded her custody, assuming that he would be able to procure some person to care for and rear the child, she would be returned to California, where she was twice afflicted with a serious malady, and placed in the hands of persons who know nothing of her disposition or past condition of health and who are complete strangers to her. Manifestly, the appellant himself could not devote to the child that care, interest, and attention which her age and physical condition demand. If he has ever had any experience whatever in such matters, the record fails to reveal it. His work requires his personal attention from two o'clock in the afternoon until eleven o'clock at night and, even if it could be said that he is capable of giving to the child the care and attention which her tender age, her disposition, and the condition of her health require, the fact that his work would necessarily separate him from her for nine hours during the critical part of the day for children would make it imperative that he procure others to take charge of the child during that time.

Considering the best interests of the child, and the law applicable to the facts adduced upon the trial, in our opinion, no error is shown and no other judgment could properly have been rendered than the one which was entered by the court below. It follows that the judgment should be affirmed and it will be so ordered.