INTERNATIONAL SECURITY LIFE IN-
SURANCE COMPANY, Appellant,

v.

Edna MELANCON, Appellee.

No. 7194.

Court of Civil Appeals of Texas,
Beaumont.

Feb. 4, 1971.

Rehearing Denied Feb. 25, 1971.

H. P. Robichau, Jr., Beaumont, for appellant.

Gordon R. Pate, Dan Collie, Beaumont, for appellee.

KEITH, Justice.

Edna Melancon delivered four checks, which she had signed but not otherwise completed, to a stranger. Two of these checks, aggregating more than $10,500.00, were completed before being presented to and honored by the drawee bank. At the time of presentation, the checks were shown to be payable to T. R. Biggar, whom Mrs. Melancon alleged to have been an agent of International Security Life Insurance Company. Plaintiff, Mrs. Melancon, recovered judgment against the defendant insurance company upon her theory of negligence. We will refer to the parties as they appeared in the trial court.

Plaintiff alleged that the defendant solicited business through agents licensed by the State Board of Insurance, among whom was Ted Richmond Biggar. She alleged that the defendant represented to the Board of Insurance that Biggar was of good character and had a good reputation for honesty and trustworthiness; and, upon such representations, Biggar was licensed to solicit insurance for defendant. She then alleged that the defendant was negligent in failing to investigate the background and reputation of Biggar and was also negligent in authorizing him to solicit insurance; that such negligence was a proximate cause of her loss, etc.

The jury found that the defendant was negligent in appointing Biggar as an insurance agent and that this was a proximate cause of the plaintiff's loss; that defendant failed to investigate the background of Biggar before representing to the Insurance Board that his reputation for honesty and trustworthiness was good; that the defendant, in the exercise of ordinary care should have made such an investigation; that the failure to make the investigation was a proximate cause of plaintiff's damages.

The jury did *not* find Mrs. Melancon guilty of negligence in delivering the signed checks which were incomplete as to amount or the name of the payee, or that Biggar was an independent contractor on the occasion in question. The judgment followed the verdict and this appeal is brought forward upon seventeen points of error, not all of which will be discussed hereinafter.

The defendant brings forward several no evidence points which require a brief review of the record. In doing so, we will follow the usual rule of considering only the evidence favorable to the finding of the jury and indulging every reasonable intendment in support thereof. In the setting of this bizarre case, plaintiff calls attention to

the fact that shortly after her husband died, she became the object of attention of several insurance agents. She was the widow of a rice-farmer, had a scanty grade-school education, and was not versed in business practices. Her husband died on March 25, 1966 and our record shows that she was qualified as Independent Executrix of her husband's estate.

During a three-week period in late November and early December, 1966, several agents of defendant succeeded in selling her at least five different policies of insurance. On January 17, 1967, a man who identified himself as Ted Biggar visited her home and asked to inspect the policies of insurance she had with defendant. It was during the course of this "inspection" that plaintiff parted with her signed checks to her grevious financial injury.

There is no question in our record but what some person purporting to be Ted Biggar made application to the State Board of Insurance for a license to sell insurance, representing himself as "making this application for license" through the defendant. A vice-president of defendant completed the application form so submitted and included therein these statements:

> "This is notice of the appointment and employment of the above applicant for a license to act as an insurance agent for this company * * *"

and:

> "The character and reputation of applicant for honesty and trustworthiness in the community where he has lived was found to be good."

On December 9, 1966, the State Board of Insurance issued a form, apparently to defendant, wherein it recited Biggar's license number and acknowledged notice by defendant of "the appointment and employment of the above agent [Biggar] to act as its insurance agent in the State of Texas * * *"

We quote Article 21.07–1, § 4(b), Insurance Code, the statutory provision in effect at the time Biggar was licensed, in the margin,[1] and note that there was no State Board examination required of the applicant. In 1969, the licensing provisions were completely revised to provide for a much more extensive examination of prospective agents. Acts 1969, 61st Leg., 2nd C.S., p. 168, ch. 25. Defendant contends, without citation of authority, that the statute in effect at the time Biggar was licensed placed the duty of determining the fitness of an applicant upon the Board and that the insurer "had every right * * * to believe and rely upon the fact that the Board carried out its duty in determining the fitness of said agent." The argument so posited ignores the salient fact that defendant sponsored Biggar's application and affirmatively vouched for his honesty and integrity.

The licensing statute under consideration required Biggar to establish his trustworthiness as a prerequisite to his being licensed. He swore to such fact in his own statement, and it was corroborated by the defendant. The statute authorizes the Board to conduct investigations and make fact findings [Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909, 913 (1942)], but the nature and extent of this investigation by the Board is not specified in the statute.[2]

---

1. "(b) The application shall be accompanied by a certificate on forms furnished by the Life Insurance Commissioner and signed by an officer or properly authorized representative of the legal reserve life insurance company he proposes to represent, stating that the insurer has investigated the character and background of the applicant and is satisfied that he is trustworthy and qualified to hold himself out in good faith to the general pub-

lic as a life insurance agent and that the insurer desires that the applicant be licensed as a life insurance agent to represent it in this State.

2. In the article, Texas Administrative Law, 47 Tex.Law Rev. 805, 849, et seq. (1969), the author summarizes the statutory requirements for licensing of an agent in these words: "The Texas Insurance Code requires that an applicant must satisfy

The licensing provision is designed to protect the public, as is shown by the opinion in Great National Life Insurance Co. v. Chapa, 377 S.W.2d 632, 635 (Tex.Sup., 1964):

"The intent of the Legislature in providing that insurance agents must be licensed was obviously for the protection of the public in respect to the purchase and sale of insurance policies."

To the same effect, see Houston-American Life Insurance Co., v. Tate, 358 S.W.2d 645, 657 (Tex.Civ.App.—Waco, 1962, no writ).

■ The defendant-insurer cannot escape so easily the responsibility of Biggar's being licensed an agent. He could procure such license only with the active assistance and sponsorship of the defendant which included a statutory certification that its own investigation revealed him to be of good reputation for honesty and trustworthiness. Furthermore, even with this certification, he could not have procured the license but for his employment by the defendant as an agent. Having so represented his qualifications and having participated in the licensing procedure, we deny defendant's theory that it was entitled to rely upon the license issued by the Board and be completely exonerated of responsibility for its own participation therein. Points three, four, ten, and twelve are overruled.

■ While defendant complains of the admission of certain evidence relating to Biggar's reputation for honesty and trustworthiness, it does not have points assigned which challenge the sufficiency of the pleadings of negligence nor are there points which challenge the findings of the jury that defendant's negligence proximately

caused plaintiff's loss. We find elaborate allegations in the petition that defendant was negligent in making the certification of Biggar's reputation, but at no place therein did the plaintiff specifically allege that the representations made by the defendant to the Board were untrue or were false. Similarly, the issues which were submitted did not traverse the truthfulness of the certification so made, i. e., that Biggar's reputation was bad.

However, our study of the record leads us to conclude that the issue was tried by agreement. Defendant did not challenge the pleadings by special exception as required by Rule 90, nor did it object to the charge for the failure to submit the issue of falsity of the representation made by the defendant. Rule 274. Under these circumstances, the issues were tried by consent and "shall be treated in all respects as if they had been raised in the pleadings." Rule 67. See also, Coleman v. Banks, 349 S.W. 2d 737, 740 (Tex.Civ.App.—Dallas, 1961, error ref. n. r. e.), wherein the authorities are collated. In addition, defendant waived its right to complain of the issues as lacking support in the pleading since no such objection was made to the charge. Rule 279. Even if "issues are incompletely stated a judgment based thereon in the absence of proper objection is as effective and controlling as if issues were properly drawn in the first place." Cox v. Huffman, 159 Tex. 298, 319 S.W.2d 295, 296–297 (1958); Allen v. American National Insurance Company, 380 S.W.2d 604, 609 (Tex.Sup., 1964).

The second point brought forward contends that the trial court erred in admitting the testimony of Pat Hayes as to the reputation of Biggar "for the reason that such testimony was not limited as to time, was not as [sic] limited as to place, and was

the Board that he is competent, trustworthy, and has been appointed by a life insurance company as its representative." (p. 849).
The author continues: "Since the Board does not have the resources to investigate the background of each applicant, the Code requires that the application be ac-

companied by a statement from a life insurance company that the applicant proposes to represent which certifies that the company has investigated his background and is satisfied that he is trustworthy and qualified to hold himself out to the public as an insurance agent." (Id. at p. 851).

hearsay as to the Appellant herein." Hayes was a long-time investigator employed by the District Attorney in Beaumont and had handled the criminal aspects of the case now under consideration. He had procured the confidential records of the Federal Bureau of Investigation and the Texas Department of Public Safety concerning Biggar and had the reports in his possession at the time of the trial. During the course of a voir dire examination of Hayes, it was developed that he had prepared himself to testify as to the reputation of Biggar.

In the course of this preparation, he went to Tarrant County, where Biggar resided at the time he made his application for a license. We now .quote Hayes' testimony:

"A. I talked to—I conducted this investigation in Fort Worth, in Tarrant County, in Nueces County, in Corpus Christi, in Kerr County, in Kerrville, that I can recall.

"Q. Can you tell us who you talked to, if you recall, in Tarrant County, Fort Worth?

"A. I talked to members of the Sheriff's Office.

"Q. Do you recall who you talked to in Nueces County, Corpus Christi?

"A. Members of the Police Department or the Sheriff's Office.

"Q. Now, based upon your personal investigation, did you form an opinion as to this man's background or truthfulness, trustworthiness, honesty and integrity?

"A. Yes, sir, I did.

"Q. Alright, sir. And what was his reputation, insofar as your opinion—

"MR. ROBICHAU: Your Honor, I want to object to that question, and any answer he is attempting to elicit, No. 1, on the grounds that his talking to these people outside the presence of my client would be hearsay, as to my client. No. 2, there is no evidence in the record in this case up to this point to, in any way, connect Ted Richmond Biggar with my client in any conduct or association that he may have had with Mrs. Edna Melancon and I have consistently pointed out to the Court that in her testimony at no time did he ever tell her that he represented my client in this case. No. 3, that all the information he is trying to elicit from this witness comes from people other than my client, some of which evidence the Court has already ruled is inadmissible and he is basing his opinion partly on some of that evidence.[3]

"COURT: That is overruled in the sense that I am going to permit you to answer Mr. Pate's last question.

"MR. ROBICHAU: Now, I want to object to it, in that it is not limited to any time or place.

"COURT: As to Tarrant County, Texas.

"Q. In Tarrant County, Texas, Mr. Hayes, what did you determine that his reputation for truthfulness, honesty, trustworthiness, etc., was?

"A. Reputation was bad.

"Q. And that is based upon your personal investigation, is that correct?

"A. Yes, sir."

Texas has long followed the rule laid down in Johnson v. Brown, 51 Tex. 65, 77 (1879), with reference to the interrogation of a witness tendered on the subject of reputation, saying:

"Mr. Justice Bell, in the elaborate case of Boon v. Weathered, 23 Tex., 686, adopts as the correct rule in such examinations,

3. Counsel undoubtedly was referring to a discussion between counsel, the witness, and the Court out of the presence of the jury over the admissibility of evidence based upon the reports of the FBI and the DPS. We will comment upon this facet of the matter later in the opinion.

that the only proper questions to be put to the witness are those laid down in the formula of Mr. Swift, in his work on Evidence, as being less objectionable than any others to which his attention had been called. These are: Whether he knows the general character or reputation of the witness intended to be impeached in point of truth among his neighbors? If so, then what that character is, whether good or bad?

"We think the proper practice should be, that, after the impeaching witness has, prima facie, thus first qualified himself to speak of the general reputation of the other witness, (this to be decided by the court,) then, before he answers the question as to what that reputation is, the opposite party, if he demands it, should have the right to cross-examine as to his means of knowledge; . * * *"

The rule for the determination of the competency of witnesses offered to prove reputation is stated in this manner in 97 C.J.S. Witnesses § 55, p. 443 (black face text):

"A witness is competent to testify as to character or reputation when his situation and circumstances are such that he is in a position to know the general character or reputation of the person in question; but one shown not to know the general reputation or not to have been so situated as to know the character or reputation of another cannot testify with respect thereto."

As was said in Schwimmer v. State, 84 Tex.Cr.R. 227, 206 S.W. 521 (1918):

"Evidence of character or reputation is in the nature of opinion testimony (Ruling Case Law, vol. 10, p. 954, § 125), and, generally speaking, the qualification of a witness to give such testimony is for the court to decide and ordinarily the court's ruling will not be reviewed. When, however, the witness on a preliminary examination discloses an absence of knowl-

edge upon which to base his conclusion, the court should not permit him to give it. Wigmore on Evidence, § 691, vol. 1; also, section 654, vol. 1. 'Reputation' is estimate in which one is held in the community, and proof of it should be made by one whose knowledge extends in some degree to the estimate of the community; that is, how it is generally regarded therein."

■ Defendant's objection to the receipt of the evidence as a violation of the hearsay rule of evidence was untenable. Such evidence is received as an exception to the hearsay rule. McCormick & Ray, Texas Law of Evidence (2nd Ed.), § 1324, p. 177; Wigmore on Evidence (3rd Ed.), § 1609, p. 478. As was said in Clark v. Hendricks, 164 S.W. 57, 58 (Tex.Civ.App.—San Antonio, 1914, no writ): "Reputation is founded on what people say about a man's actions and character, * * *"

■ The objection that the testimony was "not limited to any time or place" is equally without merit. Defendant was charged with negligence in vouching for the good character of Biggar in December, 1966. Character is a more or less permanent quality and by the very nature of the subject, is not susceptible of proof as to a period finite in time. Wigmore, supra, § 1618. The objection does not point out what might have been a tenable complaint: that reputation *after* the certification made by defendant would be immaterial and not germane to the issue. If the objection referred to a prior reputation remote in time, the objection fails to so specify this as a complaint, even if it had merit. Cf. Clark v. Hendricks, supra.

■ The objections made are, in our opinion, insufficient to raise the question of the *competency* of Hayes to testify as to the results of his investigation into the reputation Biggar bore in Tarrant County. The prevailing rule is that a witness must know the general reputation of a person in

the community where he lives in order to testify to it. Sherrill v. Phillips, 405 S.W. 2d 627, 633 (Tex.Civ.App.—Austin, 1966, error ref. n. r. e.). However, the authorities are not in accord as to the admissibility of evidence procured in an investigation made for the purpose of becoming qualified to give testimony as to reputation. We are not required to choose between the line of cases which excludes evidence based upon such an investigation and those cases which permit the receipt thereof. For a discussion of the split of authorities, see State v. Cross, 343 S.W.2d 20, 22–24 (Mo. Sup., 1961).

■ A more serious point is presented, however, by the objection referring to the fact that the witness based his opinion upon testimony ruled to be legally inadmissible (fn. 3, supra). Upon cross-examination in ʻthe presence of the jury, Hayes readily admitted that his testimony as to the bad reputation of Biggar was "also based on the other information that you [he] got that the Court has ruled inadmissible." In the reports of the FBI and the DPS, Hayes had found evidence of prior arrests and convictions; but, as he admitted, such reports were not available to persons situated as was the defendant. He had procured such reports in his capacity as an investigator in the District Attorney's office preparing a case for presentation to the Grand Jury. The trial judge made a preliminary ruling, in the absence of the jury, that the reports were inadmissible; but, as indicated above, did not sustain the objection which pointed out that the opinion was based in part thereon.

Granted that the original determination of the qualification of a witness to give testimony as to reputation is a matter for the initial determination by the trial judge,[4] the facts disclosed that Hayes' qualification was a border-line case at best. When it was clearly disclosed, in the absence of the

jury, that the testimony was based upon information which was classified and unavailable to the average citizen, we are of the opinion that it was error to receive the testimony that Biggar had a bad reputation. The testimony upon which it was based, not being available to the general public, could not have formed a base for the *general* reputation which Biggar had in the community of his residence.

The trial court having erred in admitting the testimony of Hayes as to the bad reputation of Biggar, we turn to a consideration of the consequences thereof. The president and a vice-president of defendant testified upon the trial of the case, but neither gave evidence as to any knowledge of Biggar's reputation at or prior to the time the certification as to his good reputation was made. The particular vice-president who made the certification, no longer with the defendant company, did not testify. From our review of the testimony given by the defendant's officers, it is clear that defendant made *no* investigation whatsoever. Guthrie, a vice-president, stated that, ordinarily, the company accepted the agent's references "at face value" and made no check thereof. Huffman, defendant's president, testified that no "exhaustive" investigation was made; and, he was unable to testify as to any check made of Biggar's prior activities or reputation. Biggar's statement that he had been an automobile salesman was, apparently, sufficient to convince defendant of his entitlement to a license to sell insurance.

Plaintiff proved, without objection, that Biggar had been indicted by the Jefferson County Grand Jury for the offense made the basis of this suit and that he was a fugitive from justice at the time of trial. Taken with the evidence as to a complete lack of investigation by the defendant, tantamount to a false certification as to its actual investigation, we arrive, albeit somewhat reluctantly, to the conclusion that

4. Johnson v. Brown, supra; Schwimmer v. State, supra; 61 Tex.Jur.2d, Witnesses, § 53, p. 595.

the error so found was harmless error under the provisions of Rule 434.

■ The question of whether the testimony was calculated to and did cause the rendition of an improper judgment in this case must be determined as a matter of judgment in the light of the record as a whole. Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210, 216 (1958). The defendant, having made no investigation before it made its certification, is in no position to complain now that had it made an investigation, it might not have found what Hayes did on his investigation. The question actually submitted to the jury, negligence in certifying good character, was shown by the undisputed evidence of the defendant's president and vice-president. In the peculiar posture of the case, *as presented*, the error is not found to be such as to require a reversal of the cause.

■ The witness Hayes was permitted to express his opinion that the handwriting appearing upon plaintiff's checks, when presented, was that of Biggar. Defendant's objections to Hayes' qualification as an expert were properly overruled. The exemplar used was proved to the satisfaction of the trial judge (Article 3737b, V.A.C.S.), and the qualification of the witness to express his opinion is left largely to the discretion of the trial court. McCormick & Ray, Texas Law of Evidence (2nd Ed.), § 1434, pp. 288, 289. The present complaints are addressed to the weight rather than to the admissibility of the testimony; such complaints are, consequently, found to be without merit.

The remaining points brought forward, having been examined by the court, do not present error and each is hereby overruled. Rule 434.

The judgment of the trial court is in all things affirmed.